W. H. MOUNT, Appellant,

v.

The GRAND INTERNATIONAL BROTHERHOOD OF LOCOMOTIVE ENGINEERS, Appellee.

No. 12378.

United States Court of Appeals
Sixth Circuit.

Oct. 31, 1955.

Russell Rice, and Carmack Murchison, Jackson, Tenn., for appellant.

Pierce Winningham, Jr., Jackson, Tenn., Clarence E. Weisell, Cleveland, Ohio (Homer H. Waldrop, Donald W. Hornbeck, Harold N. McLaughlin, Cleveland, Ohio, on the brief), for appellee.

Before McALLISTER, MILLER and STEWART, Circuit Judges.

MILLER, Circuit Judge.

The Appellant, W. H. Mount, is a locomotive engineer in the employ of the Gulf, Mobile and Ohio Railroad Company. The Appellee, The Grand International Brotherhood of Locomotive Engineers, is an international unincorporated association whose membership is derived principally from locomotive engineers employed on interstate railroads, including the Gulf, Mobile and Ohio Railroad. The Brotherhood has been designated by the engineers of said railroad to act for them as their bargaining agent, pursuant to Section 2 of the Railway Labor Act, Section 152, Title 45 U.S.C.A. and as such bargaining agent has negotiated on behalf of the engineers on said railroad a contract with the railroad with respect to pay, working conditions, seniority and other allied matters. The appellant seeks by this action to enjoin the Brotherhood from negotiating with the railroad a proposed amendment to this contract on the ground that such action is an arbitrary and unfair discrimination against him and other engineers of the railroad. The complaint sets out the following facts:

The railroad has maintained seniority divisions in which a locomotive engineer has seniority preference rights for holding his job and for job assignments carrying more favored rates of pay and working conditions with respect to other engineers in the same seniority division. Appellant is a member of Division 666 of the Brotherhood, which division has certain geographical boundaries on the railroad. Division 444 is a similar local of the Brotherhood also having certain geographical boundaries. In 1906, the Brotherhood negotiated a division of territorial rights in and around Cairo, Illinois, between Divisions 666 and 444, known as the Cairo Agreement, under which both divisions have operated for 48 years.

Over a period of years Division 444 attempted unsuccessfully within the Brotherhood to reopen the Cairo agreement for the purpose of changing the allocation of territorial rights. In 1947, it again brought up the question and attempted to obtain for its engineers a transfer of mileage between Tamms, Illinois, and North Cairo, Illinois, from Divi-

sion 666 to Division 444, to which action Division 666 objected. Eventually a referendum vote of the members of the Brotherhood sustained the position of Division 666. On an appeal to the Grand Chief Engineer it was held that the referendum was legally held and the appeal denied. Division 444 thereupon appealed the ruling to the Triennial Convention of the Brotherhood held in Cleveland, Ohio, in June 1950. This was an appeal of last resort within the framework of the Brotherhood. Its constitution provides that its "decisions upon all questions shall be the supreme law of the Brotherhood, and all Divisions and all members of the organization shall render true obedience thereto." The Convention sustained the decision of the Grand Chief Engineer and referred the matter back to the General Committee of Adjustment "for further handling."

The complaint alleges that notwithstanding the foregoing rulings, the Committee has notified Division 666 that it will negotiate an amendment to the contract between the employees and the railroad changing in favor of Division 444 certain trackage rights in the territory in dispute heretofore allocated under the existing contract to Division 666.

The complaint further alleges that the proposed action is in defiance of the Constitution and By-Laws of the Brotherhood; is a breach of the fiduciary duty resting upon the Brotherhood and its officers to treat the members fairly and impartially and in accordance with the constitution and by-laws of the Brotherhood; will illegally discriminate against the members of the Brotherhood belonging to Division 666 in favor of the members of the Brotherhood belonging to Division 444, with the direct and immediate result of depriving the appellant and others in his division of existing seniority and of the regular employment which they have heretofore enjoyed; that the railroad will accept the proposed modification of the contract if requested because it does not affect or prejudice its rights or interest and involves a matter over which the railroad does not attempt to exercise control; that the appellant has exhausted every remedy available to him within the framework of the constitution and by-laws; that he has no administrative relief available to him; that the threatened action by the Brotherhood "is an unfair, arbitrary, unauthorized and unlawful act of favoritism" and violates Section 2 of the Railway Labor Act; and that unless the Court grants relief he will suffer irreparable injury.

The appellee filed a motion to dismiss, and also an answer, in which as a third defense it alleged that the Court lacked jurisdiction of the subject matter, in that (1) the complaint presented no question arising under the Constitution and laws of the United States, and (2) there was no diversity of citizenship between the parties. The District Judge held that the third defense set forth in the answer was a good defense to the action and entered judgment dismissing the same, from which this appeal was taken.

Appellants rely upon Steele v. Louisville & N. R. Co., 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173 and Tunstall v. Brotherhood of Locomotive Firemen & Enginemen, 323 U.S. 210, 65 S.Ct. 235, 89 L.Ed. 187. Those cases, involving racial discrimination, hold that the Railway Labor Act imposes on a labor organization, acting by authority of the statute as the exclusive bargaining representative of a craft or class of railway employees, the duty to represent all the employees in the craft without discrimination, and that the courts have jurisdiction to protect the minority of the craft or class against the violation of such obligation. The opinion in the Steele case stated the rule as follows [323 U.S. 192, 65 S.Ct. 233]: "While the statute does not deny to such a bargaining labor organization the right to determine eligibility to its membership, it does require the union, in collective bargaining and in making contracts with the carrier, to represent non-union or minority members of the craft without hostile discrimination, fairly, impartially, and in good faith. Wherever necessary to that end, the union is required to consider requests of

non-union members of the craft and expressions of their views with respect to collective bargaining with the employer and to give them notice of an opportunity for hearing upon its proposed action."

■ Appellee contends that those cases were based upon discrimination on account of race and are not controlling on the present case where discrimination of that type is not involved. We are of the opinion that the cases are not so limited. It is true that the particular discrimination involved in those cases was based upon race, but the rulings are based upon the broad principle that the Railway Labor Act prohibits "hostile discrimination" between members of the craft, irrespective of whether it is based on race or some other ground unrelated to race. In Steele v. Louisville & N. R. Co., supra, the Court stated the rule in broad, inclusive terms, as follows: "We hold that the language of the Act to which we have referred, read in the light of the purposes of the Act, expresses the aim of Congress to impose on the bargaining representative of a craft or class of employees the duty to exercise fairly the power conferred upon it in behalf of all those for whom it acts, without hostile discrimination against them." 323 U.S. at pages 202–203, 65 S.Ct. at page 232. "Hostile discrimination" is not limited to discrimination on account of race. See dissenting opinion of Justice Minton in Brotherhood of Railroad Trainmen v. Howard, 343 U.S. 768, 776, 72 S.Ct. 1022, 96 L.Ed. 1283.

In Ford Motor Co. v. Huffman, 345 U.S. 330, at page 337, 73 S.Ct. 681, at page 686, 97 L.Ed. 1048, the Supreme Court, relying principally upon Steele v. Louisville & N. R. Co., supra, and Tunstall v. Brotherhood, etc., supra, again stated that the authority of bargaining representatives is not absolute and that they have a statutory obligation to serve the interest of all the members "without hostility to any." The ruling in that case was not based on the fact that the alleged discrimination was not racial, but on the fact that the alleged

discrimination by reason of military service was not unreasonable or unfair.

■ We are of the opinion that if the Brotherhood is engaging in hostile discrimination against a portion of the membership of the craft, without a good faith representation of the entire membership of the craft, in making contracts with the carrier, the employee so discriminated against has a cause of action arising under a law regulating commerce, under which the federal courts are given jurisdiction by Section 1337, Title 28 U.S. Code. Tunstall v. Brotherhood, supra, 323 U.S. at page 213, 65 S.Ct. 235.

There are a number of cases, of which several are cited by appellee, holding that seniority is a matter of contract rather than a right guaranteed by the Railway Labor Act, and that the courts lack jurisdiction to construe or interpret a bargaining agreement made pursuant to the provisions of that Act. Slocum v. Delaware, L. & W. R. Co., 339 U.S. 239, 70 S.Ct. 577, 94 L.Ed. 795; Colbert v. Brotherhood of Railroad Trainmen, 9 Cir., 206 F.2d 9; Spires v. Southern Ry. Co., 4 Cir., 204 F.2d 453; Starke v. New York, Chicago & St. L. R. Co., 7 Cir., 180 F.2d 569. See also: Lewellyn v. Fleming, 10 Cir., 154 F.2d 211. This is not a case involving the construction or interpretation of the collective bargaining agreement. As was pointed out in Brotherhood of Railroad Trainmen v. Howard, 343 U.S. 768, at page 774, 72 S. Ct. 1022, at page 1025: "This dispute involves the validity of the contract, not its meaning." In this case, as in that case, the employees "must look to a judicial remedy to prevent the sacrifice or obliteration of their rights under the Act."

In this case it may be that the charge of illegal discrimination in the proposed action by the Brotherhood will not be sustained by a full consideration of the evidence upon a hearing. That involves the merits of the claim, not a question of jurisdiction. We do not question the settled rule that the statutory representative of a craft under the Act is not barred from making contracts which may have

unfavorable effects on some of the members of the craft represented, including a change in seniority rights, where such change or resulting discrimination is made in good faith and is based upon relevant differences. Steele v. Louisville & N. R. Co., supra, 323 U.S. 192, 203, 65 S.Ct. 226; Ford Motor Co. v. Huffman, supra, 345 U.S. 330, 338, 73 S.Ct. 681; Division 525, etc. v. Gorman, 8 Cir., 133 F.2d 273. Our present ruling is confined to merely holding that the appellant is entitled to a hearing on the merits with an opportunity to fully develop by the introduction of evidence the alleged illegal discrimination on the part of the Brotherhood.

We do not agree with appellee's contention that the action is premature, in that the proposed contract has not been executed. A person does not have to await the consummation of threatened injury to obtain preventive relief. If the injury is certainly impending that is enough. Com. of Pennsylvania v. West Virginia, 262 U.S. 553, 592–593, 43 S.Ct. 658, 67 L.Ed. 1117; Id., 263 U.S. 350, 44 S.Ct. 123, 67 L.Ed. 1144; Standard Oil Co. of New Mexico v. Standard Oil Co. of California, 10 Cir., 56 F.2d 973, 976; Graham v. Tom Moore Distillery Co., D.C.W.D.Ky., 42 F.Supp. 853. See: Seagrave Corp. v. Mount, 6 Cir., 212 F.2d 389.

The complaint contains a fairly complete statement of the history of the controversy, sets out the ruling of the Triennial Convention in its favor, and alleges that notwithstanding that final ruling the General Committee of Adjustment is preparing to execute a contract which "flagrantly disregards the ruling of the highest body within the framework of the Brotherhood and is in defiance of the Constitution and By-Laws of the Brotherhood." The additional allegations that the proposed action of the Brotherhood is an unfair, arbitrary and unlawful act of favoritism on the part of the General Committee of Adjustment is more than a mere conclusion of the pleader and presents a factual issue for determination by the District Court.

The judgment of the District Court is reversed and the case is remanded for further proceedings consistent with the views expressed herein.