**CAPITOL AIRWAYS, INC., Plaintiff,**

**v.**

**AIR LINE PILOTS ASSOCIATION, INTERNATIONAL, Defendant.**

Civ. A. No. 2961.

United States District Court
M. D. Tennessee,
Nashville Division.

Jan. 20, 1961.

Judson Harwood, Nashville, Tenn., for plaintiff.

Cecil Branstetter, Nashville, Tenn., for defendant.

**WILLIAM E. MILLER, Chief Judge.**

This cause was heretofore submitted to the Court upon the original and amended complaints and motions of both parties for summary judgment. The Court having doubts as to federal jurisdiction, and in order to afford the parties an opportunity to further clarify their positions with respect to the jurisdictional questions, requested the filing of additional briefs. Such briefs have been filed by counsel for the respective parties and have been fully considered.

The Court is of the opinion that jurisdiction of this action exists under Secs. 1331 and 1337 of Title 28 U.S.C.A., in that the action is in effect a suit to have declared, under the Declaratory Judgment Act, 28 U.S.C.A. § 2201, the rights and obligations of the parties under the Railway Labor Act, 45 U.S.C.A. § 152, which imposes upon all carriers and their employees the duty to exert every reasonable effort to make and maintain agreements concerning rates of pay, rules, and working conditions.

It is the insistence of plaintiff that it has a valid contract with the defendant affecting pilots formerly employed by Aaxico Airlines, Inc., who are now employed by the plaintiff and that it has no duty to bargain with the defendant in regard to such employees until the contract expires on June 30, 1961. It is the insistence of the defendant that said contract is void and therefore the plaintiff has the duty to bargain at the present time with the defendant for all of plaintiff's pilots, including the Aaxico pilots affected by said contract. The validity of the contract turns upon the question of whether it was executed by proper officers of the defendant, and if not, whether the defendant has waived or is estopped to assert the lack of proper execution of the agreement by the proper officers of defendant.

In substantial effect, therefore, the action is one to declare the duties of the parties under the Railway Labor Act, and it would appear that jurisdiction exists under the authority of Felter v. Southern Pacific Co., 359 U.S. 326, 79 S.Ct. 847, 3 L.Ed.2d 854, General Committee of Adjustment of Brotherhood of Locomotive Engineers for Missouri-Kansas-Texas R. R. v. Missouri-K.-T. R. Co., 320 U.S. 323, 64 S.Ct. 146, 88 L.Ed. 76; and Mount v. Grand International Brotherhood of Loc. Eng., 6th Cir., 1955, 226 F.2d 604.

Both parties to the action have filed motions for summary judgment, and the pertinent questions are before the Court upon the pleadings and affidavits filed by the respective parties. After careful consideration, the Court is of the opinion that while the contract in question was not executed in accordance with the provisions of the defendant association's by-laws, the association nevertheless has waived and is estopped to assert such provisions, and that the contract is valid and enforceable in accordance with its terms. It appears that prior to June 1, 1960, plaintiff had operated a number of aircraft in transporting freight for the Military Air Transport Service. In this operation, known as Logair service, the plaintiff employed approximately 125 pilots. For several years prior to June 30, 1960, Aaxico had operated a similar Logair service and employed a large number of pilots for this operation. Both plaintiff and Aaxico had executed contracts with the Airline Pilots Association, International, the defendant herein, after the defendant had been certified as the bargaining agent of both plaintiff's and Aaxico's pilots by the National Mediation Board pursuant to the Railway Labor Act. The contract between plaintiff and defendant was terminated pursuant to notice effective April 1960, and is not involved in this case. The contract between Aaxico and defendant, which is here involved, will expire June 30, 1961.

Sometime prior to June 30, 1960, the plaintiff procured renewed contracts with the Military Air Transport Service for the continuation of its Logair service and for service theretofore performed by Aaxico. As a result it became necessary for plaintiff to employ additional pilots for its Logair operation. At the same time, a large number of pilots employed by Aaxico were no longer needed by that company.

In this posture, an agreement dated June 30, 1960 was entered into under which a number of the Aaxico pilots were employed by the plaintiff. The agreement adopted, with certain minor modifications, the terms and provisions of the Aaxico contract. It was executed by the plaintiff through a proper officer and by the "Aaxico Pilots Group" by L. P. McLeod, who is described as the "Master Executive Chairman." In addition, each individual pilot employed under the terms of the agreement was required to sign an instrument specifically ratifying the agreement made on behalf of the pilots by the Master Executive Chairman.

If the agreement of June 30, 1960 is a valid and binding agreement, it would appear to follow necessarily that the plaintiff is not required to bargain with the Aaxico group of pilots with respect to their terms and conditions of employment until the expiration of such agreement on June 30, 1961. Conversely, if the agreement is invalid for any reason, the conclusion would follow that the plaintiff is required presently to bargain with such employees along with its other employees as to the terms and conditions of employment. The duties and obligations of the respective parties, therefore, in fulfillment of their obligations to bargain under the terms of the Railway Labor Act are governed by the solution of the question as to the validity of the agreement of June 30, 1960.

The primary insistence of the defendant is that it is the certified bargaining representative of all employees, including the former Aaxico employees, under the Railway Labor Act; that no other agency is authorized to make an agreement with the plaintiff respecting the terms and conditions of the employment of such employees; that the agreement of June 30, 1960, extending the Aaxico contract to cover the former Aaxico employees in the employment of the plaintiff, was not executed by the defendant nor by anyone duly authorized on its behalf under the provisions of its by-laws; and that it must follow as a matter of law that the agreement is void and unenforceable. In this connection the defendant relies upon a provision in its by-laws which requires that all contracts or agreements in order to be

binding and operative shall be signed by its President or other officer duly authorized by its Board of Directors, Executive Board or Executive Committee.

It appears from the record that this provision of the defendant's by-laws was not complied with in the execution of the agreement of June 30, 1960; nor was the agreement even executed in the name of the defendant but in the name of the Aaxico pilots as a group. Although the record is not altogether clear as to the status of L. P. McLeod and as to the duties and functions of the Master Executive Chairman referred to in the agreement, it may be conceded that the said McLeod was not an officer of the defendant and that he had no specific authority from the defendant or its Board of Directors or Executive Committee to negotiate contracts or to execute bargaining agreements on behalf of the Aaxico pilots. Apparently McLeod was a representative of the pilots themselves in some capacity which, as stated, is not made entirely clear. Nevertheless, the question arises in the present case whether the defendant on the undisputed facts developed by the pleadings and affidavits waived or is estopped to assert the invalidity of the agreement of June 30, 1960. The Court is persuaded that this issue must be resolved against the contentions of the defendant, and that the agreement of June 30, 1960 must be declared valid and binding upon both parties. It appears from the affidavits without dispute that McLeod discussed the proposed agreement by telephone with Mr. Kay McMurray, Executive Vice-President of the defendant association, at considerable length during the negotiations on June 29th and June 30th. McMurray was told that the plan was the only basis on which the plaintiff was willing to employ the Aaxico pilots as a group. He understood from the conversations that the plan was not agreeable to McMurray but that if it was the best that could be done, McLeod should go ahead and execute it. From the affidavit of Judson Harwood, Attorney representing the plaintiff in the negotiations, it appears that he also discussed the proposed agreement with McMurray over long distance telephone, explaining in detail that plaintiff was considering employing the former Aaxico pilots under the terms of the Aaxico collective bargaining agreement with slight modifications. McMurray was specifically asked if the defendant association approved of this procedure or had any objections thereto. He then advised Harwood that the defendant association was most anxious to procure employment for its members and that in the final analysis the Aaxico pilots would be the ones to determine the terms and conditions under which they would accept employment. He stated that whatever was finally agreed to by them would be acceptable and agreeable to the defendant association. It is further shown by the Harwood affidavit that McLeod was first requested by the defendant to determine whether plaintiff would agree to the employment of the Aaxico group of pilots under the terms of the plaintiff's existing collective bargaining agreement. The plaintiff having refused this request, McLeod again contacted an official of the defendant in Chicago and thereafter proceeded to execute the agreement in question, stating that he had been authorized to do so by the defendant.

From these facts the conclusion would appear to be inescapable that the defendant, having knowledge through one of its higher officials that the agreement was to be executed on behalf of the Aaxico pilots and stating through such official that the agreement should be executed if it was the best that could be done under the circumstances, waived the requirement of its by-laws pertaining to the execution of collective bargaining agreements, as well as the right to have the agreement executed in its name as the exclusive bargaining agency for the pilots concerned. The established facts are also sufficient to raise an estoppel against the defendant to assert the invalidity of the contract, after the plaintiff and the Aaxico pilots acted in reliance upon the representations of the de-

fendant that the agreement should be executed as proposed if different terms could not be obtained. It would be to the detriment of the plaintiff, as well as the Aaxico pilots, if the defendant should be permitted to repudiate the agreement at this time. Although the facts are different, the principles enunciated by the Supreme Court in Townsend v. Chappell, 12 Wall. 681, 20 L.Ed. 436, support the Court's conclusion in this case that both a waiver and an estoppel arise so as to preclude the defendant from asserting or relying upon the invalidity of the agreement. Those principles are stated in the headnotes as follows:

"Where one without objection suffers another to do acts which proceed upon the grounds of authority from him, or by his conduct adopts and sanctions such acts after they are done, he will be bound, although no previous authority exist, in all respects as if the requisite power had been given in the most formal manner.

"If he had justified the belief of a third party that the person assuming to be his agent was authorized to do what was done, he is estopped to deny it."

 The Court is unable to agree with the defendant's argument that the plaintiff, before instituting the present action, was required to exhaust administrative remedies under the Railway Labor Act. The issue here is not the interpretation or meaning of a collective bargaining agreement but whether such agreement was validly entered into, i. e., whether such agreement is in existence. The Railway Labor Act makes provision for the adjustment of certain disputes by the National Mediation Board, or by a System Board of Adjustment when established by contract, but the Court is unable to find any provision in the Act which would confer upon these agencies jurisdiction to determine the type of controversy here involved. The case of Order of Ry. Conductors of America v. Pitney, 326 U.S. 561, 66 S.Ct. 322, 90 L.

Ed. 318, and Slocum v. Delaware, L. & W. R. Co., 339 U.S. 239, 70 S.Ct. 577, 94 L.Ed. 795, relied upon by the defendant, involved the meaning and interpretation of collective bargaining agreements and are therefore distinguishable from the present case. Since the issue concerns the validity of a contract as distinguished from its meaning and interpretation, the jurisdiction of the Court to proceed and to hear the controversy without the necessity of exhausting administrative remedies would appear to be supported by the decision of the Supreme Court in Felter v. Southern Pacific Co., 359 U.S. 326, 79 S.Ct. 847, 3 L.Ed.2d 854, and the decision of the Sixth Circuit in Mount v. Grand International Brotherhood of Loc. Eng., 226 F.2d 604.

Other contentions of the defendant have been examined and are found to be without merit. A form of judgment will be submitted to the Court sustaining the plaintiff's motion for summary judgment, overruling the similar motion of the defendant, and declaring the rights of the parties in accordance with this memorandum.