Roy CHAPMAN, Emmett Aills, Otho A. Ray, William R. Cox, Carl Grubbs, Byrd W. Doss, Freeman Sargent, R. M. McCrosky, J. E. Cobb, and F. M. Warren, Plaintiffs,

v.

LOCAL 104 OF the INTERNATIONAL ASSOCIATION OF MACHINISTS, and The Chesapeake and Ohio Railway Company, Defendants.

Civ. A. No. 997–H.

United States District Court
S. D. West Virginia,
at Huntington.

Nov. 6, 1961.

· J. Earl Pratt, Pratt, Kennedy & Moore, Ironton, Ohio, Itkin, Roberts & Greenbaum, New York City, and Henry L. Max, Huntington, W. Va., for plaintiffs.

Russell C. Dunbar, Dodrill, Barrett, Dunbar & Chafin, Huntington, W. Va., for defendant Local 104 of the Internatl. Assn. of Machinists.

Amos A. Bolen and Edwin W. Conley, Fitzpatrick, Huddleston & Bolen, Huntington, W. Va., for defendant Chesapeake and O. Ry. Co.

HARRY E. WATKINS, District Judge.

This is an action for declaratory judgment, an injunction and damages, brought by ten white machinist helpers in their individual capacities, against Local 104 of the International Association of Machinists, of which each is a member, and against the Chesapeake and Ohio Railway Company, by whom each has been employed. The ultimate and important question for decision is whether this court has original jurisdiction to hear a railway labor dispute, based upon alleged racial discrimination, where plaintiffs (white) do not claim that there has been any racial discrimination against them because of *their* race, but claim that there has been racial discrim-ination against others (Negro machinist helpers, who are not parties to this action) by which they have been damaged. Both defendants have moved to dismiss the complaint for failure to state a cause of action in (1) failure to allege a contractual right to employment, and (2) failure to allege a case of racial discrimination, such as to give this court jurisdiction under the authority of Spires v. Southern Ry. Co., 4 Cir., 204 F.2d 453 (1953), and Alabaugh v. Baltimore and Ohio Railroad Company, 4 Cir., 222 F.2d 861 (1955), certiorari denied 350 U.S. 839, 76 S.Ct. 77, 100 L.Ed. 748. Both defendants claim that the Railroad Adjustment Board has exclusive jurisdiction of this dispute. The defendant union has also moved to quash the return of service of process as to it on the ground that it has not been properly served with process.

A pretrial conference was called by the court in order to settle the issues relating to jurisdiction, and to agree upon the facts, so far as possible. The conference resulted in an agreed order reading as follows:

"(1) Does this court have jurisdiction in an action against a union and a railroad charging discrimination other than racial discrimination?

"If the answer is yes, then we do not get into the question of racial discrimination. If the answer is no, then the court must decide whether the evidence to be offered by plaintiffs would constitute the type of racial discrimination for which this court had jurisdiction and could grant the relief asked.

"At the pretrial conference the plaintiffs agreed that their evidence relating to racial discrimination would be as follows: (1) Plaintiffs are all white machinist helpers. Machinists are white and the laborers are white and colored.

"(2) The defendants had given certain work (which was formerly done by machinist helpers) to machinists and laborers in order to

discriminate against Negro machinist helpers (not parties to this action), and, therefore, the work available to all machinist helpers has been reduced, and the Negro machinist helpers (having greater seniority) have taken what work was available, to the detriment of the plaintiffs, who are all white machinist helpers.

"(3) Plaintiffs do not claim that there has been racial discrimination against them because of *their* race, but claim that there has been racial discrimination against others (Negro machinist helpers who are not parties to this action) by which they have been damaged."

■ The first question must be answered in the negative. The Railway Labor Act, 45 U.S.C.A. § 153 First (i) provides:

"The disputes between an employee or group of employees and a carrier or carriers growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions * * * shall be handled in the usual manner up to and including the chief operating officer of the carrier designated to handle such disputes; but, failing to reach an adjustment in this manner, the disputes may be referred by petition of the parties or by either party to the appropriate division of the Adjustment Board with a full statement of the facts and all supporting data bearing upon the disputes."

Defendants characterize plaintiffs' grievance essentially as an insistence that they have a right to do work which is being assigned to machinists and laborers, and say that this is precisely the type of dispute which the NRAB regularly hears pursuant to a clear Congressional intention to confer jurisdiction of such disputes upon the experts in the field because it involves a study of collective bargaining contract work rules and industry practices.

The above statutory provision was discussed in Order of Ry. Conductors of America v. Pitney, 326 U.S. 561, 66 S.Ct. 322, 90 L.Ed. 318 (1946), and Slocum v. Delaware L. & W. R. Co., 339 U.S. 239, 70 S.Ct. 577, 94 L.Ed. 795 (1950). These cases emphasized the desirability of having a peculiarly competent, nationwide quasi-judicial agency to decide railway grievances which require interpretation of the collective bargaining agreements of the industry, as well as to interpret rules and make findings concerning practices and work conditions in the industry. It suffices to say that these cases in their general policy statements left no doubt that the jurisdiction of the NRAB to adjust grievances under the statute is exclusive, and that neither federal nor state courts have jurisdiction to hear such disputes absent some other factor. The Fourth Circuit has honored the spirit of the policy enunciated by the Supreme Court in these cases. Spires v. Southern Ry. Co., supra.

■ Plaintiffs rely upon the following cases: Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); Brotherhood of R. R. Trainmen v. Howard, 343 U.S. 768, 72 S.Ct. 1022, 96 L.Ed. 1283 (1952); Steele v. L. & N. R. Co., 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173 (1944); Tunstall v. Brotherhood, etc., 323 U.S. 210, 65 S.Ct. 235, 89 L.Ed. 187 (1944); Richardson v. Texas and New Orleans Railroad Co., 5 Cir., 242 F.2d 230 (1957); Mount v. Grand International Brotherhood of Locomotive Engineers, 6 Cir., 226 F.2d 604 (1955), cert. denied 350 U.S 967, 76 S.Ct. 436, 100 L.Ed. 839 (1956); Dillard v. Chesapeake & O. Ry. Co., 4 Cir., 199 F.2d 948 (1952); and Rolax v. Atlantic Coast Line R. Co., 4 Cir., 186 F.2d 473 (1951). An inspection of the above cases reveals, however, that, with the exception of the Mount case, each involves racial discrimination and that each (including the Mount case) had as plaintiffs those persons against whom the discrimination was directly practiced. An unsuccessful attempt was made, in Alabaugh v. Baltimore & O. R. R., supra, to extend jurisdiction of the courts to

cases involving discrimination other than racial. Some of the circuits have so broadened the field, see Mount, supra, and Cunningham v. Erie R. R., 2 Cir., 266 F.2d 411 (1959), but the Fourth Circuit has declined to do so. The holding of the various circuits was recently set forth by Judge Medina in the Cunningham case. In the event of a conflict in the circuits, a District Court is bound to follow its own circuit. Manship v. United States, D.C.E.D.La., 163 F.Supp. 737; Panaview Door and Window Co. v. Van Ness, D.C.S.D.Cal., 124 F.Supp. 329; Welp v. United States, D.C.N.D.Iowa, 103 F.Supp. 551; and McComb v. Frank Scerbo & Sons, D.C.S.D.N.Y., 80 F.Supp. 457. If not so bound this court would follow Spires and Alabaugh because they seem to be good law. Subsequent Fourth Circuit cases and the Supreme Court itself have not overruled them.

■ It is important to note that in all the cases that constitute an apparent split of authority on the problem of requiring racial discrimination, there is one feature in common. The discrimination complained of, racial or otherwise, has always been complained of by plaintiffs against whom it has been directly practiced. As far as can be determined, there have been no railway cases where plaintiffs have attempted to proceed in the federal courts because of racial discrimination practiced against someone else and not against them.

In Spires, supra, the Fourth Circuit affirmed a dismissal by a District Court for lack of jurisdiction in a case involving a grievance as to whether road engineers or yard engineers were entitled to do certain work. Judge Parker, writing for the Court, felt that the Pitney and Slocum Supreme Court cases were decisive of the question, holding that the NRAB had been given exclusive jurisdiction over grievances of this character.

It is clear that the person who drafted the complaint in this case did not intend to base it upon racial discrimination, because there are no allegations in the complaint that plaintiffs have been deprived of any rights upon the grounds of race, so as to bring the case within the ambit of Steele v. Louisville & Nashville R. Co., 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173, and succeeding cases, wherein it has been held that the Railway Labor Act does not deprive courts of jurisdiction where plaintiffs claim they have been discriminated against because of their race. The word "discrimination" is not found in the complaint except in one prayer for relief. At the first pretrial conference, plaintiffs cited and relied upon the non-racial Mount case. The element of "indirect" racial discrimination entered the case only when plaintiffs were confronted with the Fourth Circuit cases of Spires and Alabaugh, and then for the first time urged racial discrimination. But this is not a case of racial discrimination within the meaning of the Supreme Court cases, giving the federal courts original jurisdiction to deal with racial discrimination in Railway Labor cases. And persons so "indirectly affected" by alleged racial discrimination have no right to bring court action.

Diligent research has revealed no cases where a court has taken jurisdiction of an action in which plaintiffs claim to have been only "indirectly" affected by racial discrimination against others. This dearth of authority is no doubt due to the fact that by definition, discrimination means making a distinction to the detriment of some person or class. Only the person or class put to direct disadvantage has been "discriminated against." Those indirectly affected by a hostile distinction have not been discriminated against and have no standing in courts. This is not a class action, but plaintiffs sue "in their own right for damages inflicted upon them individually." Plaintiffs rely upon Supreme Court cases which merely hold that District Courts have jurisdiction to hear cases where railroad employees allege that their employer and union have discriminated *against them because of their race*. In Railway Labor cases, the courts have limited their decisions to the right to protect persons directly discriminated against. The following statements serve to show the limited scope

of these decisions: "The District Court has the jurisdiction and power to issue the injunction necessary to protect these Negro workers from the racial discrimination practiced against them." Brotherhood of R. R. Trainmen v. Howard, 343 U.S. 768, Syl. 2, 72 S.Ct. 1022, 96 L.Ed. 1283; "the courts have jurisdiction to protect the minority of the craft or class from the violation" of the duty of representation without racial discrimination. Steele v. L. & N. R. Co., 323 U.S. 192, Syl. 1, 65 S.Ct. 226, 89 L.Ed. 173; "the employee so discriminated against has a cause of action * * *" Mount v. Grand International Brotherhood, 6 Cir., 226 F.2d 604, 607. Not a single case has held or even suggested that every person in some way affected by hostile discrimination has a judicially-cognizable claim.

Here the plaintiffs do not claim that they have been deprived of employment because they are members of the Caucasian race as was done in Williams v. Central of Georgia Ry. Co., D.C.M.D.Ga., 124 F.Supp. 164. The only discrimination complained of here is a claim of discrimination against Negroes who are now working, have not been deprived of any employment, and who are not parties plaintiff.

If this is a racial discrimination case, any railroad employee in this country who, by coincidence, works with members of the Negro race, or any other race, could by-pass the NRAB and have any grievance heard by a District Court by merely urging that there were racial factors involved as to other employees. This would bring railway labor disputes to the courts in wholesale quantities and would completely destroy the preemption doctrine of the Railway Labor Act.

If these plaintiffs are allowed to by-pass the NRAB and sue here, may not others who have been even more indirectly affected by the alleged racial discrimination do likewise? Let us suppose that one of these plaintiffs, before he lost his job, drove four other persons to their work every day. Now the driver is out of work because of alleged racial discrimination against others and these four have had to purchase cars in order to get to their jobs. Are they indirect victims of the discrimination? Suppose again that instead of losing their jobs these plaintiffs were only forced to take lower jobs by asserting their seniority and that a chain reaction of seniority "bumps" was started. Among those affected by this chain reaction, who would have a justiciable cause of action and how far down the line would this theory of indirect racial discrimination extend? In short, does anyone who is even remotely affected by the alleged racial discrimination have a cause of action? Congress has expressed its intention that railway labor disputes shall be exclusively handled by a Board which it has created and staffed with experts in the field. If the effectiveness of this statutory scheme is to be abrogated or in any way diluted, then it is for Congress to show the way.

When we eliminate the extraneous matter and look to the real issue, the question is simply whether certain work can be done by the machinists or must be done by machinist helpers. This is shown by the first sentence in plaintiffs' brief, where it is stated that they complain of "a policy of giving work done by machinists' helpers to machinists." This issue is not changed and the NRAB avoided by surrounding their claim with a theory of alleged indirect racial discrimination.

For the reasons stated above, the second question in the pretrial conference order must also be answered in the negative. The evidence relied upon by defendant, and set forth in the pretrial conference order would not "constitute the type of racial discrimination for which this court had jurisdiction and could grant the relief asked." Therefore, it follows that it would serve no purpose to permit an amendment to the complaint to specifically allege that such facts constituted racial discrimination, or to amend by alleging that plaintiffs had a contractual right to employment. If such amendment would cure the defect, of course, appropriate amendments would be allowed.

Local 104 also raised the question of sufficiency of service upon it, an unincorporated association. Rule 4(d) of the Federal Rules of Civil Procedure, 28 U.S.C.A., provides that service shall be made:

"3. Upon a domestic or foreign corporation or upon a partnership or other unincorporated association which is subject to suit under a common name, by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process and, if the agent is one authorized by statute to receive service and the statute so requires, by also mailing a copy to the defendant."

In the present case, service as to Local 104 was made upon Joseph Childers, Chairman of the Shop Committee of Local 104 of the International Association of Machinists at his home, 406 Rear Fifth Avenue, Huntington, W. Va.

Evidence was taken regarding the connection of Mr. Childers with Local 104. Mr. Childers is commonly called a shop steward. The International Association of Machinists, with which Local 104 is associated, has a constitution which sets forth the officers of the local. The shop steward, or Chairman of the Shop Committee, is not recognized as an officer of the local therein. The only duty performed by Mr. Childers as to union matters is the processing of grievances on behalf of those who work in his shop, and he holds no other position with the local. In this position he could hardly be classed as a managing or general agent. It is clear also that he was not an agent authorized by appointment or by law to receive service of process.

Plaintiffs, however, further contend that service was not intended to be effected under Rule 4(d), but rather under the provisions of 29 U.S.C.A. § 185, which provides:

"(d) The service of summons, subpoena, or other legal process of any court of the United States upon an officer or agent of a labor organization, in his capacity as such, shall constitute service upon the labor organization.

"(e) For the purposes of this section, in determining whether any person is acting as an 'agent' of another person so as to make such other person responsible for his acts, the question of whether the specific acts performed were actually authorized or subsequently ratified shall not be controlling."

This section is of no aid to plaintiffs under the present circumstances. The empowering subsection, 29 U.S.C.A. § 185(a), provides:

"(a) Suits for violation of contracts *between an employer and a labor organization* representing employees in an industry affecting commerce as defined in this chapter, *or between any such labor organizations,* may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties." (Emphasis added.)

The present suit is not one "between an employer and a labor organization", nor is it one between labor organizations. There is no authority for suit by individuals, such as these plaintiffs, under this statute. See the many cases collected in Square D Co. v. United Electrical, Radio & Machine Workers of America, et al., D.C.E.D.Mich., 123 F.Supp. 776, 779. At least one District Court feels that the Supreme Court has approved this rule. See Dimeco v. Fisher, D.C.N.J., 185 F. Supp. 213, 214.

From the foregoing, it appears that valid service on Local 104 was had neither under Civil Rule 4(d), nor under 29 U.S.C.A. § 185, and the motion to quash the return must be granted.

Plaintiffs' assertions to the contrary notwithstanding, there is an adequate remedy for them before the NRAB. The statute clearly provides that "Parties may be heard either in person, by coun-

sel, or by other representatives * * *." 45 U.S.C.A. § 153 First (j). It has been argued here that representation of a grievance to the Board by plaintiffs would be futile because of the composition of the Board. This argument has been rejected repeatedly by the courts. Jurisdiction may not be conferred upon the courts by speculation about the attitude, composition or probable findings of the NRAB—i. e. by presuming prejudice or bias in a congressionally created tribunal. As stated by Judge Parker in the Alabaugh case:

> "The argument that the Adjustment Board might not furnish a fair tribunal in cases of this character * * * furnishes no reason why the courts may ignore the fact that Congress has vested it with exclusive primary jurisdiction in such cases." [350 U.S. 839, 222 F.2d 867.]

The motions for dismissal of this action as to each defendant herein are granted, without prejudice to the plaintiffs to pursue any other course of action open to them under the laws of the United States.