Luther Ray **RUMBAUGH**, Plaintiff,

v.

**WINIFREDE RAILROAD COMPANY**, a corporation, the **Carbon Fuel Company**, a corporation, **Local Union 14182 United Mine Workers of America, District 50 United Mine Workers of America, and United Mine Workers of America, Defendants.**

**Civ. A. No. 2478.**

United States District Court
S. D. West Virginia,
Charleston Division.
Jan. 29, 1963.

Edwin M. Young, Roanoke, Va., E. Franklin Pauley, Charleston, W. Va., for plaintiff.

M. E. Boiarsky, Charleston, W. Va., for defendant unions.

F. Paul Chambers, of Jackson, Kelly, Holt & O'Farrell, Charleston, W. Va., for defendant corporations.

FIELD, Chief Judge.

In this action the plaintiff seeks to recover damages from the defendant corporations for his alleged wrongful discharge and joins the defendant Union for its alleged discrimination against him in procuring his discharge. He alleges that this Court should take jurisdiction of the action by virtue of the provisions of the Railway Labor Act, the Taft-Hartley Act and the Interstate Commerce Act. The defendants have moved to dismiss the complaint on various grounds but it is necessary to consider only the question of this Court's jurisdiction over the subject matter of this action.

First, and of paramount importance, is the fact that this is not an action based upon diversity of citizenship. There is no allegation of diversity jurisdiction in the complaint, and on its face it is clearly evident that the requisites for such jurisdiction are lacking. This lack of diversity is important in the light of the statement in the complaint that the plaintiff has elected to treat his discharge as final and sue for damages for wrongful discharge. It is now well settled that an employee, alleging his wrongful discharge, may, if he chooses, challenge the validity of his discharge before the Adjustment Board under the provisions of the Railway Labor Act or, in the alternative, treat such discharge as final and resort to the courts. However, if he comes into a federal court, jurisdiction necessarily rests upon diversity of citizenship and the law of the forum state is applied. Moore v. Illinois Central R. Co., 312 U.S. 630, 61 S.Ct. 754, 85 L.Ed. 1089; Transcontinental & Western Air v. Koppal, 345 U.S. 653, 73 S.Ct. 906, 97 L.Ed. 1325; see also Hilton v. Norfolk and Western Railway Company, D.C., 194 F.Supp. 915. The benefit of this exception to the primary jurisdiction of the Adjustment Board is not available to the plaintiff here by reason of the patent lack of diversity between the parties.

Plaintiff contends, however, that the alleged discriminatory participation by the defendant Union presents a state of facts that entitles him to seek redress in the federal courts, and relies strongly upon the Second Circuit decision in Cunningham v. Erie Railroad Company, 266 F.2d 411. It is true that Cunningham

recognized an extension of federal jurisdiction in this area which had its genesis in Steele v. Louisville & Nashville Railroad Co., 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173, and the companion case of Tunstall v. Brotherhood of Locomotive Firemen & Enginemen, 323 U.S. 210, 65 S.Ct. 235, 89 L.Ed. 187. In considering a proposed amendment to the collective bargaining agreement which would have excluded all Negro firemen from service, the Court in Steele observed that the Railway Labor Act cast upon a union the duty "in collective bargaining and in making contracts with the carrier, to represent non-union or minority union members of the craft without hostile discrimination, fairly, impartially, and in good faith." In that case the Court concluded that since the administrative remedies under the Act were not available in a dispute between employees and their representative, the grievance of the employees for breach of the statutory duty by the union was of judicial cognizance. The companion Tunstall case likewise involved alleged discrimination by the union against certain Negro employees, and the great majority of the cases which followed in the wake of Steele v. Louisville & Nashville dealt with discrimination based upon race or color. In cases involving alleged discriminatory practices under circumstances other than those involving race or color, many of the courts refused to extend the scope of this exception to the primary or exclusive administrative jurisdiction of the Adjustment Board under the Act. The Fourth Circuit took this restrictive viewpoint in Spires v. Southern Railway Co., 204 F.2d 453, and Alabaugh v. Baltimore and Ohio Railroad Co., 222 F.2d 861. In the latter case, Judge Parker, in commenting upon Steele and Tunstall, stated at pages 866 and 867:

"* * * but those cases dealt with racial discrimination, as to which the courts were well qualified to grant relief and which involved none of the matters of collective bargaining which the Adjustment Board was set up to handle.

"* * * Logically it may seem that if a court has jurisdiction to protect rights against racial discrimination it should have jurisdiction to protect them against discrimination on account of union membership; but the answer is that the Adjustment Board was not set up to deal with racial controversies, but controversies arising out of labor relationships."

Admittedly, however, in cases where the crux of the controversy involves a charge of discrimination by the employee against his union representative rather than a controversy between an employee or his union vis-a-vis the railroad, the current of judicial authority in this area has trended in the direction of the Cunningham case. See Latham v. Baltimore and Ohio Railroad Company, 2 Cir., 274 F.2d 507; Mount v. Grand International Brotherhood of Locomotive Engineers, 2 Cir., 226 F.2d 604; Nobile v. Woodward, D.C., 200 F.Supp. 785.

Some indication of this acceptance of the principle of Cunningham has appeared in the Fourth Circuit in the District Court opinion in Hostetler v. Brotherhood of Railroad Trainmen, 183 F. Supp. 281, and in the dissenting opinion of Judge Bryan in the same case on appeal in 287 F.2d 457, at page 463 where he observed:

"* * * A strict, constant and delicate sensibility of the bargaining representative to its trust has repeatedly been enjoined upon the union by the Supreme Court. Conley v. Gibson, 1957, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80. That the factual basis of these cases was race or color does not in the slightest dilute the unequivocal command of fairness they give the bargaining agent."

However in Chapman v. Local 104 of International Association of Machinists, D.C., 199 F.Supp. 186, Judge Watkins recognized the apparent conflict between Cunningham and Alabaugh and concluded that in this Circuit the District

Court was bound to follow the restrictive concept of Alabaugh.

In any event, however, the Cunningham case is of no assistance to the plaintiff here for it could have no application upon the record in this case. In Cunningham as well as the other cases in this area, the thrust of the plaintiff's case was directed primarily, if not exclusively, against his Union representative, and the position of the Railroad in the pattern of litigation was merely incidental by reason of the collective bargaining agrèement. The Railroad is ordinarily a party in such a suit only because the plaintiff seeks a reinstatement of his employment status or restoration of certain rights thereunder. See Latham v. Baltimore and Ohio Railroad Company and Nobile v. Woodward, supra. The nature of the litigation is such that the Railroad was not considered an indispensable party in Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed. 2d 80. In the latter case the nature of the controversy as the basis for federal jurisdiction and the posture of the Railroad therein was stated as follows at page 44, 78 S.Ct. at page 101, 2 L.Ed.2d 80:

> " * * * This case involves no dispute between employee and employer but to the contrary is a suit by employees against the bargaining agent to enforce their statutory right not to be unfairly discriminated against by it in bargaining. The Adjustment Board has no power under § 3 First (i) or any other provision of the Act to protect them from such discrimination. Furthermore, the contract between the Brotherhood and the Railroad will be, at most, only incidentally involved in resolving this controversy between petitioners and their bargaining agent."

The prolix and ambiguous complaint in the present case goes far afield from a mere complaint of alleged discriminatory treatment of the plaintiff by the Union representative in exercising its authority by virtue of the Act; and it would cast the defendant corporations in a position far different from that of innocent bystanders whose presence is merely incidental by reason of the collective bargaining agreement. It alleges that the defendant corporations actively conspired with the Union to bring about plaintiff's discharge, and charges that the Railroad controlled the Union in a manner that was detrimental and discriminatory toward the employees. The plaintiff does not seek a determination or restoration of his employee status, but rather asks to recover damages for his wrongful discharge. A distillation of the plaintiff's allegations indicates that they are nothing more than a complaint for an unlawful discharge from his employment or a conspiracy upon the part of the defendants to commit a common law tort against the plaintiff. Jurisdiction of these causes of action cannot be entertained by this Court in the absence of diversity of citizenship between the parties. Accordingly, the motions to dismiss will be granted.