**COLBERT et al. v. BROTHERHOOD OF RAILROAD TRAINMEN et al.**

No. 13366.

United States Court of Appeals
Ninth Circuit.

July 13, 1953.

Rehearing Denied Sept. 14, 1953.

C. P. Von Herzen and Samuel L. Laidig, Los Angeles, Cal., for appellants.

Clifton Hildebrand, Oakland, Cal., and Richard E. Crow, Los Angeles, Cal., for appellees Brotherhood of Railroad Trainmen and others.

C. W. Cornell and Randolph Karr, Los Angeles, Cal., for appellee Pacific Electric Ry. Co.

Before STEPHENS and HEALY, Circuit Judges, and McCORMICK, District Judge.

McCORMICK, District Judge.

This is an appeal from a final order granting motions to dismiss a complaint in the District Court.

Appellants as plaintiffs on October 2, 1951, filed their complaint in the court below wherein they named the appellee entities as defendants in the action.

The suit which plaintiffs contend is warranted by the Railway Labor Act, also referred to as the Act, 45 U.S.C.A. § 151 et seq., and by Title 28 U.S.C.A. § 1337,[1] was for injunction and declaratory relief in the form of a representative or class action on behalf of the fourteen specifically named plaintiff employees of the Pacific Electric Railway Company and on behalf of "other persons similarly situated" whose seniority status in the Pacific Electric Railway Company was alleged in the complaint to have been actually or potentially injuriously affected by a collective bargaining agreement entered into on December 22, 1942, between Pacific Electric Railway Company, hereinafter called P.E. or the Railway, and the Brotherhood of Railroad Trainmen and their affiliated local lodges and General Grievance Committee, Pacific Electric Lines, all hereinafter referred to as B.R.T., or the Brotherhood.

1. Section 1337, Title 28 U.S.C.A., reads: "The district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies."

The record shows that at the time of the filing of the complaint five of the specified plaintiffs were union members of Lodge No. 912 in the Brotherhood; eight of such plaintiffs had been union members in the Brotherhood but had been expelled by defendant Lodge No. 912 thereof, and one of such plaintiffs had no record of union membership in the Brotherhood.

Two separate motions to dismiss the complaint were interposed in the District Court: One by P.E. and the other jointly by the named affiliates in B.R.T. The motions to dismiss are similar in substance and effect and in summary they assert that the court lacks jurisdiction over the subject matter alleged in the complaint, (a) because the complaint involves no federal question for judicial determination, (b) because of failure to state a claim upon which relief can be granted by the court at this time, (c) because no diversity of citizenship or adequacy of amount involved is alleged, (d) because no primary judicial relief is available to plaintiffs as they have not resorted to or exhausted administrative remedies open and available to them under the Railway Labor Act, supra, and also in local and national bodies within the organization of B.R.T., and (e) because the action and claims alleged in the complaint are barred by applicable statutes of limitation and by the equitable doctrine of laches.

After oral arguments by counsel for the respective parties both motions to dismiss were on January 28, 1952, submitted for decision, and under date of March 5, 1952, the District Judge granted the motions and ordered the complaint dismissed. It is from such order docketed and entered on March 7, 1952, that this appeal has been taken.

The questioned order of the trial court is omnibus in scope and effect relative to the several stated grounds in the motions to dismiss, and inasmuch as no further opinion either formal or informal was rendered in the disposition of the action by the District Court, all issues within the purview of the motions to dismiss have been considered by us in this appeal.

There are two outstanding and paramount questions posed by the appellants which have been emphasized in the briefs. Both are regarded under the Act and in the light of the record before us as crucial relative to any judicial interposition in the action. While other issues presented by the motions to dismiss are weighty and critical, they are not of as much immediate concern as jurisdictional and procedural questions, namely, whether any federal question determinable at this time by the court lies within the allegations of the complaint, and, secondly, whether plaintiffs should resort to and exhaust administrative remedies set up and within the scope and province of the authority of the Railway Labor Act as interpreted by the Supreme Court[2] before invoking the justiciable relief prayed for in the complaint. These two questions are interrelated.

Epitomizing the material parts of the complaint which are designed to present a litigious claim to the court it is shown that the P.E. is engaged in the interstate railway business; that plaintiffs have been for many months before the filing of the complaint operating personnel of the P.E., having entered the employ of the P.E. after August 6, 1941; that pursuant to the Railway Labor Act the motormen, conductors, brakemen and other operating personnel of the P.E. have elected as their representative in collective bargaining matters the B.R.T. and such Brotherhood has acted and asserts the right to act as the exclusive bargaining representative of the motormen, conductors, brakemen, locomotive engineers and other personnel of the P.E.; that such Brotherhood has through the General Grievance Committee representing the lodges also sued as defendants herein entered into agreements with P.E. regarding rates of pay and working conditions for

2. Order of Railway Conductors of America v. Pitney, 326 U.S. 561, 66 S.Ct. 322, 90 L.Ed. 318; Slocum v. Delaware, L. & W. R Co., 339 U.S. 239, 70 S.Ct. 577, 94 L. Ed. 795; Switchmen's Union of North America v. National Mediation Board, 320 U.S. 297, 64 S.Ct. 95, 88 L.Ed. 61.

the employees of P.E. such as plaintiffs who are members of the general craft and class represented by B.R.T., which agreements are detailed "in nature" and have been in effect for a number of years and have been modified from time to time; that under the Act the bargaining representative of the employees is charged with the duty of representing all employees of the same craft or class impartially and in good faith; that prior to December 22, 1942, seniority rights of employees were confined to districts on the P.E. System and to the craft and class in which the trainmen worked and not inclusive of the entire service and all classes and crafts, but that on December 22, 1942, a new agreement between B.R.T. and P.E. concerning working conditions was entered into and was in effect at the time of the filing of the complaint. This written agreement in Article 36 appended to and made a part of the complaint established seniority rules and provided for a system of seniority known as "Merged System Seniority," which, according to allegations of the complaint, was contrary to a standard rule on all railroads of the United States except P.E. and was the result of "the arbitrary, capricious and fraudulent" enactment by P.E. and B.R.T. the bargaining representative of the appellants' craft. In this particular the complaint alleged this crucial issue in the suit *in haec verba,* "That the change in the agreement entered into on December 22, 1942, in respect of seniority rights, was arbitrarily, capriciously and fraudulently made retroactive to the 6th day of August, 1941, in disregard of the rights acquired by men who entered the service between the 6th day of August, 1941, and before the 22nd day of December, 1942, some of whom are plaintiffs in this action." And, further, "That as a result of the arbitrary, capricious and fraudulent enactment of the merged seniority provisions of Article 36 above referred to, plaintiffs have lost valuable positions on the lines of defendant P.E. to less experienced men who happened to have been in the service of P. E. in other capacities for a longer period of time than plaintiffs, have been monetarily damaged thereby, and ultimately will have no positions at all."

There are allegations of additional irregularities by older employees of the P.E. who it is claimed controlled the B.R.T. local unions in the fall of the year 1942, and whose determination because of war and postwar railway service eventualities it is averred was arbitrarily to place themselves and other older members in a privileged category even at the expense of men already in the service of P.E. and in violation of provisions of the Constitution of the General B.R.T. organization.

Finally, the complaint alleges that since the conclusion of hostilities in the world conflict and the commencement of a program of abandonment of street car lines the need for employees of P.E. in street car service has steadily declined and many positions have been abolished; that men in street car service with seniority dates prior to August 6, 1941, are displacing men in freight service after a short qualification period and unless an injunction is issued plaintiffs will in a short time be ousted from their jobs because of rights claimed by older employees of P.E. under the Merged Seniority System set up by the agreement of December 22, 1942.

General allegations of the inadequacy and unavailability of any remedy at law are made, and on information and belief it is specifically asserted that no consideration would be given to plaintiffs' complaint against B.R.T. if made, by the National Railroad Adjustment Board although such Board would probably entertain a complaint by plaintiffs against P.E. The prayer is for a decree declaring the "merged system seniority" provision contained in Article 36 of the current agreement between defendants P.E. and B.R.T. invalid, void and of no force and effect and that defendants and each of them be enjoined from enforcing in any manner whatsoever the "merged system seniority" contained in Article 36 of the Agreement of December 22, 1942.

The complexities in satisfactorily providing methods for solving operational problems in the "railway world" so as to maintain the nationwide "peace essential to the uninterrupted service of the instrumentalities of interstate commerce" have

been recounted by the Supreme Court.[3] And it is appropriate because of the representative origin of the Railway Labor Act and the pertinent Congressional amendments in 1934 creating and conferring jurisdiction in the National Railroad Adjustment Board of disputes of the kind alleged in the complaint [4] that injunctive and other judicial process be withheld until the agency created by Congress to deal with the intricate and technical factors inherently involved in the interpretation of the "Merged System Seniority" provisions contained in Article 36 of the agreement of December 22, 1942, acts in the premises. Until such procedure is invoked plaintiffs have not and cannot show irreparable loss and inadequacy of the legal remedy warranting the interposition of equity by the court.

It is clear from the provisions of the Act that the individual employee is given the right as a "party", 45 U.S.C.A. § 153, First, (i) to refer his grievance to the National Railway Adjustment Board and, furthermore, is entitled under First (j) of the same section of the Act as such "party" to designate a representative of his own selection for and in proceedings at the National Board level. Elgin, J. & E. Ry. Co. v. Burley, 325 U.S. 711, 65 S.Ct. 1282, 89 L.Ed. 1886. Thus there is vouchsafed a hearing before the agency designated by Congress and upon which jurisdiction has been conferred by Congress to also make findings and enter awards in all disputes between carriers and their employees growing out of grievances of the kind alleged in the complaint or out of the interpretation or application of agreements relative to working conditions, in which category in railway public service seniority is of course included.

Appellants seek to present an analogous court case to those considered and discussed in Steele v. Louisville & N. R. Co., 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173; Tunstall v. Brotherhood, etc., 323 U.S. 210, 65 S.Ct. 235, 89 L.Ed. 187, and Brotherhood, of R. R. Trainmen v. Howard, 343 U.S. 768, 72 S.Ct. 1022, 96 L.Ed. 1283. But each of those cases, while involving minority personnel in railway operations, pertained to race discriminations alone, which in the words of the court "are obviously irrelevant and invidious." Here, however, except as to the latitudinal claim amounting to no more than a conclusion of law that the contractual differential relative to appellants' seniority in the P.E. is "arbitrary, capricious and fraudulent," there is no showing that the statutory representative of the craft to which appellants belonged when the questioned contract was made did not in good faith effectuate the change in working conditions as of August 6, 1941 so as to bring the matter complained of within pronouncements of the Supreme Court in decisions under the Railway Labor Act and the principles and concomitants of collective bargaining as provided and infused therein. In Steele v. Louisville & N. R. Co., supra, the court said [323 U.S. 192, 65 S. Ct. 232]:

"We hold that the language of the Act to which we have referred, read in the light of the purposes of the Act, expresses the aim of Congress to impose on the bargaining representative of a craft or class of employees the duty to exercise fairly the power conferred upon it in behalf of all those for whom it acts, without hostile discrimination against them.

"This does not mean that the statutory representative of a craft is barred from making contracts which may have unfavorable effects on some of the members of the craft represented. Variations in the terms of the contract based on differences relevant to the authorized purposes of the contract in conditions to which they are to be applied, such as differences in seniority, the type of work performed, the competence and skill with which it is performed, are within the scope

---

3. General Committee of Adjustment of Brotherhood, of Locomotive Engineers for Missouri-Kansas-Texas R. R. v. Missouri-K. T. R. Co., 320 U.S. 323, 64 S. Ct. 146, 88 L.Ed. 76.

4. 45 U.S.C.A. § 153; Brotherhood of Locomotive Firemen and Enginemen v. Central of Georgia Ry. Co., 5 Cir., 199 F.2d 384, and citations in footnote 2.

of the bargaining representation of a craft, all of whose members are not identical in their interest or merit."

And again, in Ford Motor Co. v. Huffman, 345 U.S. 330, 73 S.Ct. 681, 686, the Supreme Court stated:

"Inevitably differences arise in the manner and degree to which the terms of any negotiated agreement affect individual employees and classes of employees. The mere existence of such differences does not make them invalid. The complete satisfaction of all who are represented is hardly to be expected. A wide range of reasonableness must be allowed a statutory bargaining representative in serving the unit it represents, subject always to complete good faith and honesty of purpose in the exercise of its discretion.

"Compromises on a temporary basis, with a view to long range advantages, are natural incidents of negotiation. Differences in wages, hours and conditions of employment reflect countless variables. Seniority rules governing promotions, transfers, layoffs and similar matters may, in the first instance, revolve around length of competent service. Variations acceptable in the discretion of bargaining representatives, however, may well include differences based upon such matters as the unit within which seniority is to be computed, the privileges to which it shall relate, the nature of the work, the time at which it is done, the fitness, ability or age of the employees, their family responsibilities, injuries received in course of service, and time or labor devoted to related public service, whether civil or military, voluntary or involuntary."

We think appellants fail to appreciate the essential difference between the suit laid in the complaint and cases wherein collective bargaining agreements containing invidious proscriptive factors that are inimical to statutory or constitutional right, such as racial discriminations, are presented to the court. Here no such right is involved. Seniority among railway workers is fundamentally and wholly contractual and it does not arise from mere employment and is not an inherent, natural or constitutional right.

After extended study of the record in the light of applicable decisions of the Supreme Court of the United States, we are unable to find any error in the order granting the motions to dismiss the complaint in the District Court and such order is accordingly

Affirmed.