303 F.2d 182
 Arvil R. HARDCASTLE, Vernon E. Clary, Lawrence J. Starkel, James H. Kreider, Robert D. Mock, on their own behalf and on behalf of others similarly situated, Appellants,
v.
WESTERN GREYHOUND LINES (DIVISION OF THE GREYHOUND CORPORATION), a corporation, D. L. Rhodes, as an individual in a representative capacity, J. Adornetto, as an individual in a representative capacity, Dan Banta, as an individual in a representative capacity, Appellees.
 No. 17843.
 United States Court of Appeals Ninth Circuit.
 May 16, 1962.
 Rehearing Denied June 18, 1962.
 
 Darwin, Rosenthal & Leff, Irwin Leff, San Francisco, Cal., for appellant.
 Neyhart & Grodin, Joseph R. Grodin, San Francisco, Cal., for appellees Rhodes and others.
 Brobeck, Phleger & Harrison, Marion B. Plant, San Francisco, Cal., for appellee Western Greyhound Lines.
 Before HAMLIN, KOELSCH and DUNIWAY, Circuit Judges.
 HAMLIN, Circuit Judge.
 
 
 1
 The appellants are all bus driver employees of Western Greyhound Lines which operates bus lines throughout eleven western states. They brought an action against Western Greyhound Lines and others in the United States District Court for the Northern District of California, Southern Division, for declaratory relief and an injunction alleging that they were unlawfully deprived of certain seniority rights. Appellees moved to dismiss the appellants' complaint for failure to state a claim upon which relief could be granted. Thereafter the parties presented certain documents to the court and certain stipulations of fact were made. The appellants were asked to and did make an offer of proof before the district court. The parties have agreed that the motion before the district court should be considered as a motion for summary judgment. After consideration the motion was granted and this appeal followed. We have jurisdiction under the provisions of 28 U.S.C.A. § 1291.
 
 
 2
 The stipulation of fact entered into by the parties shows that prior to June 1, 1957, Greyhound Corporation, a Delaware Corporation, was carrying on certain common carrier activities in the northwestern part of the United States under the name Northwest Greyhound Lines, and other common carrier activities were being conducted under the name Northland Greyhound Lines. Also prior to June 1, 1957, Pacific Greyhound Lines, a California corporation, was engaged in the common carrier business in other portions of the western United States. On June 1, 1957, Pacific Greyhound Lines was merged with Greyhound Corporation and the latter corporation survived the merger. Concurrently with the merger a division of the Greyhound Corporation was established under the name Western Greyhound Lines which division incorporated the former territories serviced by Pacific, Northwest and Northland Greyhound Lines.
 
 
 3
 Prior to the formation of Western Greyhound Lines on June 1, 1957, the employees in the territory occupied by Western Greyhound Lines were represented for collective bargaining purposes by one or another of several locals or divisions of the Amalgamated Street, Electric Railway, and Motor Coach Employees of America. Prior to and at the time Western Greyhound Lines was formed the various locals and divisions had collective bargaining agreements which provided for divisional seniority rights. Divisional seniority is a system of seniority whereby the operations of an employer are divided into divisions and whereby an employee hired into a particular division has seniority within his divisions over all other employees in all divisions except those employees who were hired into his particular division before him. An alternative to divisional seniority is system seniority, which means that an employee is senior only to other employees in the entire system who were hired after him. That is, any employee hired before him anywhere in the entire system would have seniority over him.
 
 
 4
 On January 10, 1958, the above mentioned locals and divisions of the Amalgamated Association formed the Council of Western Greyhound Amalgamated Divisions (referred to herein as the Council) which was formed for the purpose of representing all the employees of Western Greyhound Lines. Various collective bargaining agreements were entered into by Western Greyhound Lines and the Council. One agreement which was dated May 28, 1959, superseded prior agreements with respect to seniority rights. It provided that only employees hired before June 1, 1957, would be entitled to retain divisional seniority rights and that all employees hired subsequent to June 1, 1957, would have only system seniority rights.
 
 
 5
 The appellant bus drivers in this case are all persons who were employed by Western Greyhound Lines between June 1, 1957, and May 28, 1959. The appellants in their complaint alleged that the adoption of system seniority on May 28, 1959, insofar as it operated retroactively to June 1, 1957, "arbitrarily, unfairly and capriciously" took away valuable divisional seniority acquired by the appellants between June 1, 1957, and May 28, 1959, the date when the contract providing for system seniority was executed. The appellants alleged that they were "discriminated against" and that the action was "unreasonable". No contention was made by appellants that the retention of seniority for employees hired before June 1, 1957, was invalid or that the adoption of system seniority for employees hired after May 28, 1959, was invalid.
 
 
 6
 We have concluded that the motion to dismiss appellants' complaint treated as a motion for summary judgment was properly granted.
 
 
 7
 In Steele v. Louisville & N. R. Co., 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173 (1944), a case arising under the Railway Labor Act, 45 U.S.C.A. § 151 et seq., the Supreme Court held that a union which purports to represent its entire membership must not engage in "hostile discrimination" against some members, but must attempt to represent all fairly, impartially and in good faith. In Steele certain Negro railroad firemen were minority members of a union which discriminated against the Negro members on the basis of race and which union entered into agreements and adopted rules whereby Negroes would ultimately be excluded from the union and from working as railroad firemen. The complaint alleged facts in detail which on their face showed discrimination on account of race.[1]
 
 
 8
 Subsequent to Steele, hostile discrimination by a union against some of its members has been interpreted to be conduct which is proscribed by the National Labor Relations Act, as amended, 29 U.S. C.A. § 151 et seq., just as the proscription existed with respect to the Railway Labor Act. Ford Motor Co. v. Huffman, 345 U.S. 330, 73 S.Ct. 681, 97 L.Ed. 1048 (1953).[2] Moreover, cases subsequent to Steele firmly established that hostile discrimination of any kind is prohibited and that the prohibition is not limited to discrimination on account of race. E. g., Ford Motor Co. v. Huffman, supra; Ferro v. Railway Express Agency, Inc., 296 F. 2d 847 (2d Cir. 1961); Mount v. Grand International Brotherhood of Locomotive Engineers, 226 F.2d 604 (6th Cir. 1955).
 
 
 9
 Some of the general principles pertaining to collective bargaining and hostile discrimination have been stated by the Supreme Court, in Ford Motor Co. v. Huffman, supra, in the following manner:
 
 
 10
 "[T]he * * * purposes [of the National Labor Relations Act] are broad enough to cover terms of seniority. * * * That the authority of bargaining representatives * * * is not absolute is recognized in Steele v. Louisville & N. R. Co., 323 U.S. 192, 198-199 [65 S.Ct. 226, 89 L.Ed. 173] * * *. Their statutory obligation to represent all members of an appropriate unit requires them to make an honest effort to serve the interests of all those members, without hostility to any. [Citations omitted.]
 
 
 11
 "Any authority to negotiate derives its principal strength from a delegation to the negotiators of a discretion to make such concessions and accept such advantages as, in the light of all relevant considerations, they believe will best serve the interests of the parties represented. A major responsibility of negotiators is to weigh the relative advantages and disadvantages of different proposals. * * * Inevitably differences arise in the manner and degree to which the terms of any negotiated agreement affect individual employees and classes of employees. The mere existence of such differences does not make them invalid. The complete satisfaction of all who are represented is hardly to be expected. A wide range of reasonableness must be allowed a statutory bargaining representative in serving the unit it represents, subject always to complete good faith and honesty of purpose in the exercise of its discretion."[3]
 
 
 12
 An essential element, then, necessary to raise a limitation upon a union's discretion in bargaining with respect to seniority rights is a bad faith motive, an intent to hostilely discriminate against a portion of the union's membership. This element has been present in cases decided subsequent to Ford Motor Co. v. Huffman, supra, such as Ferro v. Railway Express Agency, Inc., supra,[4] Mount v. Grand International Brotherhood of Locomotive Engineers, supra,[5] and Colbert v. Brotherhood of Railway Trainmen, 206 F.2d 9 (9th Cir. 1953).[6]
 
 
 13
 The complaint in the instant case did not contain any allegation that the adoption of systemwide seniority on June 1, 1957, rather than on May 28, 1959, when the contract was executed, was the result of hostile discrimination against the appellants. The complaint nowhere alleges that the union representatives had a bad faith motive, intent or purpose in selecting June 1, 1957, rather than May 28, 1959. The complaint herein alleged that the adoption of system seniority as to the appellants was "arbitrary", "capricious" and "unreasonable." In Colbert v. Brotherhood of Railway Trainmen, supra, this court held that similar conclusory words ("arbitrary", "capricious" and "fraudulent") without a concomitant showing of a lack of good faith did not set forth a claim.[7] Dismissal of the complaint was affirmed. In view of the fact that this case is being treated as an appeal from the granting of a motion for summary judgment, it is unnecessary for us to decide whether, in the light of Colbert and the later case of Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), appellants' complaint failed initially to set forth a claim upon which relief could be granted.
 
 
 14
 Nowhere in the material outside the complaint which was examined by the district court do facts or allegations appear which show or tend to show any improper motive or purposeful discrimination.[8] The entire record before this court — the complaint, stipulations, offer of proof and affidavits — does nothing more than establish that there is a difference of opinion between portions of the union membership. It is admitted that the proposals for changing seniority were submitted to the union membership and passed upon favorably by a majority thereof. As stated in Ford Motor Co. v. Huffman, supra,
 
 
 15
 "Inevitably differences arise in the manner and degree to which the terms of any negotiated agreement affect individual employees and classes of employees. The mere existence of such differences does not make them invalid. The complete satisfaction of all who are represented is hardly to be expected." [Emphasis added.][9]
 
 
 16
 The appellants herein have done nothing more than present facts showing dissatisfaction with a result adopted by a majority of the union of which the appellants are members. That portions of an electorate will be dissatisfied with the result of an election is a fact inherent in the democratic process and the principle of majority rule.
 
 
 17
 The appellants in their brief on appeal state the general principle within which they seek to come in the following manner:
 
 
 18
 "The political strength or weakness of a group is not a proper basis for discrimination as between groups of employees. That is, a modification of seniority which favors a majority group over a minority and has no other rational basis would fail to meet the test of fairness required by a union in representing its members."[10]
 
 
 19
 The stipulated facts before this court amply demonstrate that there was a "rational basis" upon which to select June 1, 1957, as the date for beginning system seniority. On June 1, 1957, the merger between Greyhound Corporation and Pacific Greyhound Lines took place. As a result Western Greyhound Lines (as a division of Greyhound Corporation) came into existence operating in the territory formerly occupied by Pacific, Northwest and Northland Greyhound Lines. June 1, 1957, was the first time when all the employees in this territory were employed by a single employer. The date for creating system seniority was the same date when the system itself was created. Moreover, after the creation of Western Greyhound Lines the employees from January 10, 1958, were represented for collective bargaining purposes by a single entity, the Council, whereas before that time the employees were represented by several locals or divisions. Thus, employees hired before the creation of the single system were not affected by the change in seniority; those hired after the system was created had seniority on a systemwide basis. It thus appears to us that the stipulated facts conclusively illustrate the presence of the "rational basis" which appellants contend is necessary.
 
 
 20
 We are not unaware of the rule that summary judgment is not to be granted unless no genuine issue as to any material fact is presented to the court.[11] However, we are of the opinion that appellants have not met the required standard. No genuine issue of material fact is presented by the record in this case. There are no allegations of bad faith or purposeful discrimination against appellants. Nor are there any facts alleged from which we can infer the possible presence of a bad faith motive in selecting June 1, 1957, as the date for starting system seniority. Furthermore, appellants offered no facts in their offer of proof from which the presence of hostile discrimination could be detected by inference or otherwise. On the other hand, undisputed facts do appear in the stipulation of facts entered into by the parties which show that in fact there was a rational basis upon which to select June 1, 1957.
 
 
 21
 Collective bargaining representatives have broad discretion to bargain with respect to seniority rights and this discretion should not be interfered with in the absence of some showing that a change in seniority rights resulted from hostile discrimination.
 
 
 22
 Judgment affirmed.
 
 
 
 Notes:
 
 
 [1]
 See also Tunstall v. Brotherhood of Locomotive Firemen & Engineermen, 323 U.S. 210, 65 S.Ct. 235, 89 L.Ed. 187 (1944)
 
 
 [2]
 See also Wallace Corp. v. N. L. R. B., 323 U.S. 248, 255, 65 S.Ct. 238, 89 L.Ed. 216 (1944)
 
 
 [3]
 345 U.S. at 337-338, 73 S.Ct. at 686
 
 
 [4]
 In Ferro a union had an agreement with Railway Express Agency providing for separate seniority districts. There were provisions for transfer of employees from one district to another. When railroad traffic decreased at one terminal due to re-routing, a dispute arose between the union and the employer as to whether men could be transferred from the terminal where work decreased to a terminal where work increased due to the re-routing. A special agreement resulted from negotiations between the union and the employer which provided for the transfer of 65 men. Those not transferred would remain on furlough. These latter persons brought an action against the union and the employer claiming that as members of one local they had been discriminated against in favor of members of another local of their union. Although the complaint broadly alleged that the defendants "have in a willful and malicious manner discriminated against plaintiff in favor of members" of another local, it appeared that plaintiffs relied on the fact that the union in signing the complained of agreement "was motivated by a desire to discriminate against them" (296 F.2d at 850). In addition the affidavit of the plaintiff filed in opposition to a motion for summary judgment stated that the "purpose" of entering into the agreement was "to discriminate against members of a politically weak local * * * in favor of the politically stronger local" (296 F.2d at 851). The court held that a cause of action had been stated within the doctrine of the Steele case
 
 
 [5]
 In Mount collective bargaining agreements provided for divisional seniority. Two divisions — No. 666 and No. 444 — had certain geographical boundaries under which they had been operating for 48 years. No. 444 repeatedly attempted to have the boundaries changed more favorably to it. A referendum was held which sustained the position of No. 666. Within the processes provided by the Union the validity of the referendum was sustained against attacks by No. 444. When the matter was referred to a committee of the union an amendment changing the geographical boundaries was proposed which would have been favorable to No. 444 notwithstanding the referendum. A complaint of No. 666 members claimed that the amendment would discriminate against them unfairly. The court sustained the complaint, saying that a cause of action would exist if the union was "engaging in hostile discrimination against a portion of the membership of the craft,without a good faith representation of the entire membership." (226 F.2d at 607). [Emphasis added.] The complaint contained a complete statement of the history of the controversy.
 
 
 [6]
 In Colbert, a case factually very similar to this case, the complaint of some employees alleged that a certain agreement between their union and employer providing for a change from divisional seniority to system seniority was "arbitrary, capricious and fraudulent" since it was made retroactively effective. In Colbert as in this case only those employees hired during the period between retroactive application of the agreement and the signing of it were adversely affected by the change. These bare allegations were held inadequate to show a cause of action under the doctrine announced in the Steele and Ford Motor Co. v. Huffman cases, supra
 
 
 [7]
 206 F.2d at 12
 
 
 [8]
 At the hearing on the motion to dismiss (ne summary judgment) before the district court the following proceedings took place:
 "The Court: What would be your offer of proof?
 "Mr. Darwin: Our offer of proof would show through witnesses that individuals, men, operators, drivers, when they signed into the divisions on the date of employment were given, at their request and at the explanation of employer representatives as well as members of their respective divisions or, as is sometimes called `locals,' they were told that the specific division into which they were employed would be retained by them throughout their employment if they so desired. It would show by proof that some of the men undertook runs for years — and when I say years I mean two and three years in some instances — of a less desirable nature in order to work themselves up into a position of seniority within the division to make it possible for them to then obtain a more desirable run. It would show that some of the men are still so employed and but for the requirement that they select — selection is the word under this stipulation — by April 15 make a selection of other runs they would not have been prejudiced except for this stipulation.
 "* * * We are not addressing ourselves to the question of internal affairs and remedies within an organization except to indicate, as we have said in our Complaint, which will be a matter of proof, that we tried within those internal regulations and rules to get relief which we have not been able to, and that is why we are here. But that is not the gravamen of our Complaint in Court, your Honor. The complaint sets up ultimate facts. We would show following those ultimate allegations by proof that within the decisions which have been in some instances cited by both sides, capricious, arbitrary action has been taken over what would on the surface seem to be the facade of collective agreements and bargaining."
 It is evident that no facts indicating or tending to indicate any hostile discrimination or bad faith were offered. We do not imply that making such assertions in an offer of proof would in and of itself have been sufficient to warrant a denial of summary judgment.
 
 
 [9]
 345 U.S. at 338, 73 S.Ct. at 686. See text accompanying note 3 supra
 
 
 [10]
 Appellants relied on the Ferro case, note 4 supra, as authority for the quoted proposition. However, the facts disclosed by the record in this case do not show that there was any discriminatory action in favor of one politically stronger local or faction of the union against a politically weaker local or faction. Reliance upon Ferro in this case is misplaced
 
 
 [11]
 See Fed.R.Civ.P. 56(c). See also Fed.R.Civ.P. 12(c), 28 U.S.C.A