[Civ. No. 21296. First Dist., Div. Two. May 18, 1964.]

DIVISION 1223 OF AMALGAMATED ASSOCIATION OF STREET, ELECTRIC RAILWAY AND MOTOR COACH EMPLOYEES OF AMERICA, AFL-CIO, Plaintiff and Appellant, v. THE COUNCIL OF WESTERN GREYHOUND AMALGAMATED DIVISIONS OF THE AMALGAMATED ASSOCIATION OF STREET, ELECTRIC RAILWAY AND MOTOR COACH EMPLOYEES OF AMERICA, AFL-CIO et al., Defendants and Respondents.

Allan Brotsky and Charles W. Decker for Plaintiff and Appellant.

Marion B. Plant, Brobeck, Phleger & Harrison, Willard S. Johnston and Ackerman, Johnston, Johnston & Mathews for Defendants and Respondents.

AGEE, J.—Plaintiff appeals from the judgment of the superior court denying its petition to vacate an award made in a labor dispute arbitration proceeding (Code Civ. Proc., § 1285). The other three parties to the arbitration appear as the respondents herein.

Respondent Western Greyhound Lines (the ''Company'') operates a public transportation system in the western United States. Its nonsupervisory employees are members of Amalgamated Association of Street, Electric Railway and Motor Coach Employees of America, AFL-CIO.

Appellant is one of the seven local unions of Amalgamated which collectively service the entire area in which the Company operates. Their respective jurisdictional districts are

generally coextensive with the Company's operating divisions. Local 1223 (appellant) services operating Division 2 (Arizona Division) and respondent Local 1222 services operating Division 3 (Coast Division).

Respondent Council of Western Greyhound Amalgamated Divisions is composed of the seven local unions referred to above and acts as their exclusive bargaining agent.

The Council and the Company executed a collective bargaining agreement on May 1, 1958, covering the period of March 1, 1958, to and including February 29, 1960. Section 31 of this agreement provided that ''When two or more [Company] Divisions are merged into one, the seniority rosters shall be merged.''

On September 29, 1958 the Company notified Locals 1223 and 1222 that it was merging its Arizona and Coast Divisions (2 and 3) effective November 1, 1958.

Appellant (Local 1223) felt that the merger of its seniority roster with that of Local 1222 would be detrimental to its members. Acting through the Council, appellant succeeded in obtaining a stipulation from the Company, dated January 23, 1959, that the effective date of the merger of the two rosters would be postponed until February 1, 1962.

This stipulation contained the following concluding provision: ''This stipulation shall not be subject to negotiation except by mutual consent of the parties hereto. . . .'' It was ratified by all of the members of the Council except Local 1222, which wanted an immediate merger. However, Local 1222 went along with the stipulation and abided by it.

Several months later the Company announced its intention to merge operating Divisions 4 and 6 and to enlarge Division 5. Some of the employees in those divisions were dissatisfied with the effect of such action upon their seniority rights.

This resulted in negotiations with the Company. On May 28, 1959 the Council and the Company entered into a stipulation whereby the Company relinquished its right under the 1958 bargaining agreement to merge seniority rosters upon a merger of Company divisions.

This stipulation contained the following proviso: ''The stipulation [of January 23, 1959] covering the merger of Divisions 2 and 3 shall continue in full force and effect. . . .'' Appellant objected to this retention by the Company of its rights under the January 23, 1959, stipulation. The May 28, 1959, stipulation was ratified by all of the members of the Council except appellant.

On June 12, 1960, the Council and the Company executed a bargaining agreement covering the period from March 1, 1960, to and including February 28, 1962. This agreement deleted section 31 of the 1958 agreement. Thus, by such deletion and by the May 28, 1959, stipulation the Company no longer had the right unilaterally to merge seniority rosters by its act of merging Company divisions.

Appellant continued its efforts to rescind the stipulation of January 23, 1959, but the Company refused to do so.

Finally, on February 19, 1962, the Company and the Council agreed to arbitrate the following two questions: "(a) Does contract [1960 agreement] supersede [January 23, 1959] stipulation provision for merger of Seniority Roster of Divisions 2 and 3? (b) Is a merger of Seniority Rosters precluded by provisions of Section 15 of the [1960] agreement?" (Section 15 provides that the agreement is subordinate to federal and state law.)

The arbitration award which was made, following a two-day hearing and the submission of briefs, answered both of these questions in the negative. The award was thereafter confirmed by the superior court. Appellant raises three issues on appeal.

█ *Issue*: Appellant contends that the submission agreement "contemplates arbitration before a single neutral arbitrator"* and that this is indicated by the following provision contained therein: "That an agreement be reached between the Company and the Council for the appointment of an *arbitrator*." (Italics added by appellant.)

Section 3 of the 1958 and 1960 bargaining agreements provides for a board of arbitration consisting of three members, one to be chosen by the Council, one by the Company, and the third by the other two.

At the outset of the hearing all of the parties, including appellant, stipulated that the board was properly constituted pursuant to the applicable bargaining agreements; that it was composed of Mr. Maata, appointed by the Company, Mr. Rhodes, appointed by the Council, and Mr. Burns, appointed by them; that the issues submitted were properly before such board in accordance with the submission agreement; and that the decision of the arbitration board was to be considered final and binding.

---

*Such type of arbitration is recognized under certain circumstances. (Code Civ. Proc., § 1282, subd. (a).)

No objection or protest to this three-man panel was ever made by appellant at any time during the arbitration proceeding. The lower court properly denied appellant's request to introduce evidence in the instant action that the parties intended to have only a single arbitrator.

Appellant's real opposition to the three-man board appears to be that it had expected the Council and the Company to appoint arbitrators who would not "participate as judges on the merits of the dispute" and thus "would allow the selected arbitrator, so-called neutral arbitrator, to function as truly, as a one-man arbitrator would have served."

Appellant's reasoning as to the Council-appointed member is that, in a dispute between two of the Council's locals, he would be expected to remain impassive. Appellant advances no reason why it should expect the Company-appointed member also to act as a "dummy."

Such an expectation flies directly in the face of appellant's express stipulation that the arbitration board had been constituted pursuant to the collective bargaining agreements. Section 3 of the 1958 and 1960 agreements provides: "The Board so constituted shall weigh all evidence and arguments on the points in dispute, and the written decision of a majority of the members of the Board of Arbitration shall be final and binding upon the parties thereto."

It is thus clear that any decision rendered by the board would require action by at least two of its members.

The decision rendered by the board was unanimous. It was well and ably written by Mr. Burns, the so-called "Third Arbitrator." Appellant makes no attack upon his impartiality. He apparently qualifies in appellant's opinion as "a single, neutral arbitrator."

Even though we were to assume the validity of appellant's contention, we fail to see how mere passive participation by the other two arbitrators would have changed the decision prepared by Mr. Burns. Actually, as appellant admits, "Mr. Burns conducted the hearing. The other arbitrators ... asked no questions, made no rulings, engaged in no colloquy."

█ *Issue*: Appellant complains that it was not allowed by the lower court to prove that "the practice was for the Council [appointed] arbitrator, at all times, to remain the creature of the Council and not to exercise his independent judgment with respect to the merits of the dispute. ..."

So far as the personnel of the board is concerned, as we pointed out above, this was expressly agreed to by all parties,

including appellant, at the outset of the arbitration proceeding. Appellant's reply to this is that appellant "had no way of knowing until after the arbitration was over" that the Council-appointed arbitrator would assume "the right to exercise his judgment, independent of the Council, as to the merits of the dispute."

Appellant makes no other charge of disqualification against Mr. Rhodes. As stated above, there is nothing in the record to indicate that the result of the arbitration would have been any different if, as appellant contends he should, Mr. Rhodes had acted as "the creature of the Council."

In our opinion, appellant's complaint that Mr. Rhodes "assumed the right to exercise his judgment, independent of the Council, as to the merits of the dispute," is without merit.

 *Issue*: Appellant contends that the board based its award upon information not obtained at the hearing and not disclosed to appellant and that it then deprived appellant of the opportunity to meet such information by denying appellant's request to reopen the proceeding for the taking of further evidence. (Code Civ. Proc., §§ 1282.2, subd. (g); 1286.2, subd. (e).)

Appellant's attack is centered upon the following finding of the board: "The circumstances surrounding the execution of the January 1959 stipulation and of the May 1959 stipulation and the Council's obligations under the January 1959 stipulation as well as the probable effect of the merger of the seniority rosters of Divisions 2 and 3 establish a reasonable basis for the differentiation between the merger of the seniority rosters of Divisions 2 and 3 and the rights of employees in other divisions with respect to merger of seniority rosters."

Appellant, contending that there was no evidence to support the finding of "a reasonable basis for the differentiation" petitioned the board to reconsider its decision and to reopen the proceeding for the taking of further evidence.

In its decision denying appellant's petition, the board made the following statement, which gives rise to the contention now being made by appellant: "Operating and personnel conditions affecting Divisions 2 and 3 were not the same in May 1959 or January 1959 as the operating and personnel conditions of Divisions 4, 5 and 6."

Appellant argues that such a finding *must* be based upon

information obtained outside of the hearing because there was no evidence adduced at the hearing which would support it. We disagree.

Personnel morale and operating efficiency are inseparable in the public transportation field.

The record shows that appellant's members were unhappy about the merger of the seniority rosters of itself and Local 1222. Appellant sought and obtained the stipulation of January 23, 1959, which postponed the merger until February 1, 1962. The members of Local 1222 were unhappy with the postponement and dissented from the stipulation. However, Local 1222 abided by it. It appeared that a serious labor dispute had thus been settled.

When, some months later, the Company announced its intention to merge Company Divisions 4 and 6 and enlarge Division 5, some of the employees in those divisions were dissatisfied with the effect of such action upon their respective seniority rights. This resulted in negotiations with the Company and the entering into of the stipulation of May 28, 1959.

The Company had no desire to disturb the conditions then existing in Divisions 2 and 3 and the May stipulation expressly provided that the January stipulation "covering the merger of Divisions 2 and 3 shall continue in full force and effect. . . . ''

Appellant argues that a representative of the Company had testified in another arbitration proceeding that the Company was not interested in mergers of seniority rosters and that, therefore, the refusal of the Company to release appellant from its approval of and consent to the January 23, 1959, stipulation is unreasonable and shows a hostility toward the appellant's members. This is a matter of interpretation of such testimony and the context in which it was given. The board did not give it the same interpretation as did appellant and we think the board was correct in so doing.

■ Appellant correctly states that federal law prohibits either party to collective bargaining from enforcing provisions of collective bargaining agreements which operate to discriminate against some members of the collective bargaining unit in the absence of a rational basis for such discrimination. (*Steele* v. *Louisville & N.R.R. Co.*, 323 U.S. 192, 202-203 [65 S.Ct. 226, 89 L.Ed. 173] ; *Brotherhood of Railroad Trainmen* v. *Howard*, 343 U.S. 768, 773 [72 S.Ct. 1022, 96

L.Ed. 1283] ; *Ford Motor Co.* v. *Huffman,* 345 U.S. 330, 338-339 [73 S.Ct. 681, 97 L.Ed. 1048].)

However, it must be remembered that the Council was the duly appointed collective bargaining representative and that it had wide discretion. As stated in *Hardcastle* v. *Western Greyhound Lines,* 303 F.2d 182, 188, which also involved the same May 28, 1959, stipulation: "Collective bargaining representatives have broad discretion to bargain with respect to seniority rights and this discretion should not be interfered with in the absence of some showing that a change in seniority rights resulted from hostile discrimination." (To the same effect: *Humphrey* v. *Moore,* 375 U.S. 335 [84 S.Ct. 363, 11 L.Ed. 2d 370].)

 We find that there was substantial evidence in the record to support the board's statement that the operating and personnel conditions affecting Company Divisions 2 and 3 were not the same as those in Divisions 4, 5 and 6 at the time that the respective stipulations were entered into. We further find that there is no merit to appellant's contention that the board used "outside" information as the basis of its award.

Judgment affirmed.

Shoemaker, P. J., and Taylor, J., concurred.