324 F.Supp. 818 (1971)
K. L. WHEELER, Sr., A. T. Bruce, Robert Berry, H. L. Benoy, Jr., D. S. Bennett, T. W. Mitchell, et al., members of a class, Plaintiffs,
v.
BROTHERHOOD OF LOCOMOTIVE FIREMEN AND ENGINEMEN, an unincorporated association and labor union, national in scope, Brotherhood of Locomotive Engineers, an unincorporated association and labor union, national in scope, the United Transportation Union, an unincorporated association and labor union, national in scope, and the Seaboard Coast Line Railroad Company, a corporation, Defendants.
Civ. A. No. 70-513.
United States District Court, D. South Carolina, Florence Division.
Heard March 17, 1971.
Decided March 23, 1971.
*819 Richard G. Dusenbury, of Dusenbury & Dusenbury, Florence, S. C., for plaintiffs.
Saunders M. Bridges, of Bridges & Whisenhunt, Florence, S. C., for Brotherhood of Locomotive Firemen and Enginemen and United Transportation Union.
Harold A. Ross, of Ross, Kraushaar & Bennett, Cleveland, Ohio, and John M. Scott, of Wright, Scott, Blackwell & Powers, Florence, S. C., for Brotherhood of Locomotive Engineers.
Hugh L. Willcox, of Willcox, Hardee, Houck, Palmer & O'Farrell, Florence, S. C., for Seaboard Coast Line Railroad Company.
HEMPHILL, District Judge.
Motion for summary judgment by defendant Brotherhood of Locomotive Engineers[1] invites decision by this court. Other defendants presented no such motion, but were represented by counsel (without argument) when the motion was heard. A previous motion, by all defendants, to dismiss for want of jurisdiction was previously denied by order of this court. This action finds origination in discontent with defendants' alleged activities which were engaged in to implement the merger of the Atlantic Coast Line Railroad (ACL) and the Seaboard Airline Railroad (SAL) into one railroad, now known as the Seaboard Coast Line (SCL) Railroad, through authorization of the Interstate Commerce Commission, 320 I.C.C. 122 (1963), which was subsequently approved by the Supreme Court of the United States, Florida East Coast R. Co. v. United States, 386 U.S. 544, 87 S.Ct. 1299, 18 L.Ed.2d 285 (1967).
On July 8, 1970, the six named plaintiffs, allegedly representing a class of all employees of the Seaboard Coast Line Railroad ("Seaboard") working in the craft of locomotive firemen and/or in *820 the craft of locomotive engineers,[2] filed the instant complaint alleging jurisdiction in this court by virtue of the provisions of the Railway Labor Act (45 U. S.C. § 151 et seq). Plaintiffs were yard firemen and/or yard engineers on the former Seaboard Air Line Railroad ("SAL"), serving in the former Old North Carolina Division of the SAL and are now in consolidated Seniority District No. 1 under terms of personnel consolidation rules.
This is another case in the present merge-and-consolidate oriented economy of employee dissatisfaction with seniority rights following a merger. The basic gravamen of plaintiffs' complaint as to BLE is the propriety of the consolidation of the engineers' seniority roster in Seniority District No. 1 (Virginia), which includes the former seniority district of plaintiffs, SAL Old North Carolina Division. An additional integral, but seemingly distinct, claim of these plaintiffs averred in paragraph 11 of the complaint attacks the alleged failure of BLE and BLF&E to coordinate "with the two merging companies in resolving the problem of merging the seniority rosters", for which purported failure they pray that the court enjoin the defendant unions "from operating as totally separate entities * * * in the fields of seniority, wages and working conditions on seniority rosters."
To place the issues in their proper context, it should be noted that The Brotherhood of Locomotive Engineers has been and is the collective bargaining representative for the craft of locomotive engineers, and no other craft, on the Seaboard and its predecessor companies. In that capacity, BLE has entered into contracts governing the rates of pay, rules and working conditions, including seniority, of the members of that craft. Similarly, The Brotherhood of Locomotive Firemen and Enginemen has been and is the collective bargaining representative for the craft of locomotive firemen, but no other craft, employed on Seaboard and its predecessor railroads. It also has separate collective agreements governing the rates of pay, rules and working conditions for the craft of firemen.
While an appeal to prevent the Seaboard merger was pending before the Supreme Court, all labor organizations representing the employees on the two merging roads entered into employee protective agreements as provided for in the last sentence of Section 5(2) (f) of the Interstate Commerce Act (49 U.S.C. § 5(2) (f)). On November 3, 1966, BLF&E, along with 17 other unions forming the Railway Labor Executives' Association, executed one agreement entitled Agreement for Protection of Employees in the Event of Merger of the SAL and ACL. One week later, November 10th, BLE separately entered into a nearly identical agreement with the two railroads. Among other things, these agreements provided for guaranteed earnings and guaranteed employment for the existing employees of the predecessor companies. Thus, during their continued employment with Seaboard, none of the employees would receive less wages (upgraded for subsequent wage increases) in any month than they had *821 received prior to the merger, nor would they be without a job in any craft in which they held seniority. In consideration of these promises, and in accordance with the conditions imposed by the I.C.C., the agreement provided for subsequent consolidation of seniority districts and seniority rosters which were to be implemented by further agreement.
Prior to the merger of the SAL and ACL, road and yard seniority on the ACL were combined on one seniority list for the craft of locomotive engineers and on one seniority roster for the craft of firemen. However, the former SAL maintained separate seniority rosters for road firemen and separate seniority rosters for road engineers and yard engineers. Thus, on the former SAL, an employee would hire out as a road fireman or a yard fireman and, in turn, would be promoted upon proper qualification and examination to engineer in the same class of service, road or yard. With certain exceptions, such as a hired engineer, individuals on both railroads were promoted to engineer in sequence of their dates of hire as a fireman. In order to consolidate the seniority rosters of the former SAL and former ACL, it was first necessary to par or equate those rosters. Throughout the system, the one constant factor to make them equivalents were the individuals' employment dates.
In order to accomplish this, BLE first provided by agreement with the carrier to consolidate the separate road and yard engineers' rosters on SAL, based upon the individual's date of hire as a fireman except when said date would place an engineer out of his respective standing as an engineer, i.e., would permit him to "run around" an engineer directly above him on the former SAL roster involved in that consolidation.
After the engineers' rosters had been equated on this basis, the BLE agreement established the further merger of the ACL and SAL rosters into one roster for each of the six newly consolidated seniority districts on the basis of a percentage block or work equity allocation, which was computed from four factors indicating the amount of work of that former district to the total of the work brought into the consolidated district by all former districts.
As previously noted, plaintiffs are working in consolidated Seniority District No. 1 (Virginia) and the equity quotient for their former district, SAL Old North Carolina, in that consolidation was 38.008%. This means that the engineers from that former district would have about three and one-half positions of every block of nine names on the consolidated rosters of 582 men.[3]
Initially due to threats of litigation by BLF&E and later by certain ex parte restraining orders issued by state courts in Georgia and South Carolina, Seaboard refused to place the BLE agreements and rosters into effect on January 16, 1968, as had been contemplated. Therefore, BLE instituted suit in the United States District Court for the Middle District of Florida in the case of Brotherhood of Locomotive Engineers v. Seaboard Coast Line R. Co., Case No. 68-41-Civ-J, to require Seaboard to place into effect forthwith the agreement and the merged seniority rosters required thereunder, including Seniority District No. 1 (Virginia), the subject of this action. On January 30, 1968, that court, which had approved the I.C.C. merger order and employee protective conditions, issued a mandatory injunction. On appeal from that order by the BLF&E, after consolidation with a suit instituted by it in the Southern District of Florida, the United States Court of Appeals for the Fifth Circuit affirmed. Broth. of Loc. Firemen & Eng. v. Seaboard Coast Line R. Co., 413 F.2d 19 (5th Cir. 1969), cert. den. 396 U.S. 963, *822 90 S.Ct. 432, 24 L.Ed.2d 426 (1969). That court rejected BLF&E's contention that the agreement between BLE and Seaboard was invalid because BLF&E, as the representative of the craft of firemen and the persons employed therein, was not a party to its negotiation and did not consent to it.
Pursuant to the above order of January 30, 1968, Seaboard placed the involved merged rosters for the craft of engineers into effect on February 6, 1968. On February 8, 1968, a class action in behalf of Seaboard's employees in the crafts of engineers and firemen was brought against Seaboard to restrain it from placing the Engineers' rosters into effect in Seniority District No. 1 (Virginia) and in the other consolidated seniority districts. Cole v. Seaboard Coast Line R. Co., Civil Action No. 5614 (E.D.Va.). In part, the complaint averred in paragraph 5:
This is a proceeding for a preliminary and permanent injunction restraining defendant from continuing or maintaining arbitrary, discriminatory, inequitable and invalid policies and practices through application of the Engineers' Seniority Roster No. 1 for defendant's employees in the Virginia Seniority District, said roster having been placed into effect by defendant for its employees on or about February 6, 1968, and from continuing or maintaining arbitrary, discriminatory, inequitable and invalid policies and practices through defendant's application of other similar seniority rosters for employees in other seniority districts. [Emphasis supplied].
Among other things, the complaint prayed that the court enjoin Seaboard and "those acting in concert with them and at their direction from continuing or maintaining the aforesaid arbitrary, discriminatory, inequitable and invalid policies or practices which adversely affect and limit the accrued seniority rights of plaintiffs and the class they represent."
BLE was permitted to intervene. On June 6, 1969, in denying defendants' separate motions to dismiss, the court concluded the sole issue within its jurisdiction was whether these had been a breach of the duty of good faith representation by BLE and, if so, whether there was active participation in that breach by Seaboard. After trial in the cause, judgment was entered for the defendants BLE and Seaboard on January 30, 1970. That court (Mehrige, J.) observed from the testimony presented:
I think a really honest, sincere effort, from the record before this court, was made by the Brotherhood and the railroad. Everything was above board as far as the evidence is concerned.
Cole was affirmed by the Fourth Circuit February 3, 1971.
It may also be noted that in Price v. Seaboard Coast Line R. Co. and Broth. of Loc. Engineers, Civil Action No. 68-271, the United States District Court for the Northern District of Alabama, Southern Division (Grooms, J.) did on September 11, 1970, grant judgment for the same defendants BLE and Seaboard in regard to the merged engineer seniority rosters for consolidated Seniority District No. 4 (Western) and reached the same conclusions as did the District Court in the Cole case, supra.
On the basis of the aforedescribed prior decisions and the applicable law to the involved factual situation, BLE has moved for summary judgment in its favor in the instant case.
In Cole v. Atlantic Coast Line[4] a similar action was instituted by plaintiffs as a class (of engineers), all members of BLE alleging that BLE had violated its duty in representing them in matters of seniority, by virtue of certain rosters and policies promulgated subsequent to the merger (supra). They sought a preliminary and permanent injunction restraining Seaboard from continuing or maintaining alleged arbitrary, discriminatory, *823 unequitable and invalid policies and practices in the application of its Engineer's Seniority Roster for Seniority Roster No. 1 (Virginia). BLE intervened by leave of the court. The District Court for the Eastern District of Virginia entered a final determination in Cole v. Seaboard A. L. R. Co., supra, finding that the agreements as applied and the consolidated roster was not arbitrary, inequitable or invalid and had not been motivated by hostile or discriminatory reasons. On Appeal to the Fourth Circuit (No. 15,036), the plaintiffs therein have asserted, contrary to the position of the instant plaintiffs, that the Engineers' rosters are inequitable and invalid for there is "an unfair advantage to former SAL yard engineers over former ACL road engineers."
Plaintiffs' second contention was the basic issue raised in Broth. of Loc. Firemen & Eng. v. Seaboard C. L. R. Co. and Broth. of Loc. Engineers, 413 F.2d 19 (5th Cir. 1969), cert. den. 396 U.S. 963, 90 S.Ct. 432, 24 L.Ed.2d 426. The Fifth Circuit rejected that theory which, advocated by BLF&E, was to the effect that it and the employees represented by it had a right to bargain jointly with BLE. Not only has this specific issue been litigated previously as to these parties, but there is no support for the expressions of the plaintiffs in the statute or in other cases involving the question.
As shown previously, the Railway Labor Act specifically creates the separate crafts of engineers and of firemen. Section 2, Ninth of the Act specifies that "the carrier shall treat with the representative so certified [by the Mediation Board] as to the representative of the craft or class for the purposes of this Act." Section 6 of the Act provides for notices of intended changes in agreements to be made "by either party," the carrier or the bargaining representative of the craft. And throughout the Act, all references to negotiations are in the context of bilateral, as distinguished from tripartite, procedures and negotiations.
In light of these provisions, the Supreme Court in Virginian Ry. Co. v. System Federation, 300 U.S. 515, 548, 57 S.Ct. 592, 600, 81 L.Ed. 789 (1937), found that the Act imposes upon the carrier "the affirmative duty to treat only with the true representative, and hence the negative duty to treat with no other."
Subsequently, in Order of Ry. Conductors and Brakemen v. Switchmen's Union, 269 F.2d 726 (1959), cert. den. 361 U.S. 899, 80 S.Ct. 206, 4 L.Ed.2d 155 (1959), the Fifth Circuit held that two unions representing related crafts were not entitled to notice or to bargain on matters affecting the work performed and the seniority of its members while in a craft for which another union was the certified representative, for the latter union alone had the exclusive prerogative to bargain on the subjects of hiring, seniority, and work in its craft.
Plaintiffs are, in actuality, complaining about the individual craft representation in the railroad industry as provided in the Act itself. If dissatisfied with that representation, their remedy is under Section 2, Ninth of the Act. Recognizing this principle, the Fourth Circuit in an opinion written by Judge Sobeloff held the dispute as to the integration of seniority rosters of employees due to the Norfolk & Western and Virginian Railway merger was a representation dispute within the exclusive jurisdiction of the National Mediation Board under Section 2, Ninth.[5] Div. 14, Order of R.R. Telegraphers v. Leighty, 298 F. 2d 17 (4th Cir. 1962), cert. den. 369 U. S. 885, 82 S.Ct. 1160, 8 L.Ed.2d 287 (1962). And more recently, the District of Columbia Circuit has held that both BLE and BLF&E may serve separate notices and negotiate separately with the carriers on a matter of common interest *824 as to which both asserted a fairly claimable right. Broth. of Loc. Firemen & Eng. v. Nat'l Mediation Board, 133 U.S. App.D.C. 326, 410 F.2d 1025 (1969), cert. den. 396 U.S. 878, 90 S.Ct. 149, 24 L.Ed.2d 136 (1969). It is, therefore, submitted that the well-established legal principles in this area fail to provide any support for the proposition being attempted to be made by plaintiffs.
Further, in view of the fact that plaintiffs' claim has been judicially determined in the aforementioned litigation, this court lacks subject matter jurisdiction. Therefore, it is submitted that the final judgment rendered on the merits in the Cole case, supra, in which these plaintiffs were a part of the class which brought suit, is an absolute bar to the instant action upon the same claim or demand insofar as the complaint pertains to the Engineers' seniority rosters in Seniority District No. 1. 1B Moore's Federal Practice, ¶ 0.405(1) (1965 ed.). In addition, this court may look for guidance to the decision rendered by its sister court in the Price case, supra, relating to the merger of the seniority rosters on the same basis in Seniority District No. 4 (Western).
It is also submitted that the judgment entered by the Fifth Circuit Court of Appeals relative to the lack in the courts of jurisdiction over the claim asserted in paragraph 11 of the complaint is a bar to that cause, even though there was no decision on the merits in that the policy of res judicata extends to such matters. Davis v. Davis, 305 U.S. 32, 59 S.Ct. 3, 83 L.Ed. 26 (1938); Hostetler v. Broth. of R.R. Trainmen, 183 F.Supp. 281, 290 (Md.1960), affirmed 287 F.2d 457 (4th Cir. 1961), cert. den. 368 U.S. 955, 82 S. Ct. 397, 7 L.Ed.2d 387 (1962).
As correctly recognized by plaintiffs, the decision in this case will be governed by the legal principles relating to the bargaining representative's statutory duty of fair representation which has been implied by the Supreme Court as arising from Sections 1, Sixth; 2, Second, Fourth, Sixth and Seventh of the Railway Labor Act. Steele v. Louisville & N. R. Co., 323 U.S. 192, 193, 65 S.Ct. 226, 89 L.Ed. 173 (1944).
Initially, however, it should be pointed out that seniority is a contractual right, which exists solely by reason of the collective bargaining agreement and may therefore be altered or modified through the collective bargaining process. Aeronautical Indus. Dist. Lodge 727 v. Campbell, 337 U.S. 521, 526, 69 S.Ct. 1287, 93 L.Ed. 1513 (1949); Trailmobile Co. v. Whirls, 331 U.S. 40, 53, n. 21, 67 S.Ct. 982, 91 L.Ed. 1328 (1946); Local 1251 International Union of United Automobile Workers, v. Robert Shaw Controls Co., 405 F.2d 29 (2d Cir. 1968); Colbert v. Broth. of R.R. Trainmen, 206 F.2d 9 (9th Cir. 1953); cert. den. 346 U.S. 931, 74 S.Ct. 320, 98 L.Ed. 422 (1954); Starke v. New York, C. & St. L. R. Co., 180 F.2d 569 (7th Cir. 1950).
In also holding the seniority provisions of a particular agreement are subject to alteration by the collective bargaining representative in agreement with the carrier, as the circumstances of the reorganization creating the New York Central System required, the Sixth Circuit has said:
"The brotherhood had the power by agreement with the railway to create the seniority rights of plaintiff, and it likewise by the same method had the power to modify or destroy these rights in the interest of all members." Elder v. New York Central R. Co., 152 F.2d 361, 365 (6th Cir. 1945).
Railroad mergers obviously create situations requiring modification of seniority. By their very nature, mergers result in changes as to the work to be done, the manner in which it is performed, and its allocation to the employees. Accordingly, it is necessary to adjust seniority and other rights flowing from the collective agreements to meet these circumstances.
That mergers cause loss of jobs and diminution in seniority rights was recognized in United States v. Lowden, 308 *825 U.S. 225, 233, 60 S.Ct. 248, 252, 84 L.Ed. 208 (1939), where the court said:
Not only must unification result in wholesale dismissals and extensive transfers involving expense to transferred employees, but in the loss of seniority rights which, by common practice of the railroads are restricted in their operation to those members of groups who are employed at specified points or divisions.
The court approving this merger pointed up the substantial adverse effects the transaction would have upon railroad employees and their families but nevertheless found that the employees' interests were adequately protected by the compensatory allowances provided in the order. In this respect, the court said:
"The Commission noted that the merger will have substantial adverse effects upon many railroad employees and their families * * *. See 320 I.C.C. at 200. Approximately 4,257 jobs will be abolished and the location of employment will be changed for 4,439 other employees. 320 I.C.C. at 154." Florida East Coast Ry. Co. v. United States, 259 F.Supp. 993, 1017 (M.D.Fla.1966).
Contrary to these authorities as to the effects of railroad mergers, plaintiffs are nevertheless seemingly claiming through citation of Section 5(2) (f) of the Interstate Commerce Act that they as employees involved in a railroad merger cannot be placed "in a worse position with respect to their employment." This view is not only unrealistic but is inapposite due to the ruling of the Supreme Court in Broth. of Maint. of Way Employees v. United States, 366 U.S. 169, 81 S.Ct. 913, 6 L.Ed.2d 206 (1969). A like argument was specifically raised by the craft representative in that case. In rejecting this view of the 1940 amendment to that section of the Act, the court held that only compensatory allowances were provided for and not a freeze upon positions or the incidents of employment.
These fundamental views have also been expressed by the Fourth Circuit. Div. 14, Order of R.R. Telegraphers v. Leighty, 298 F.2d 17 (4th Cir. 1962), cert. den. 369 U.S. 885, 82 S.Ct. 1160, 8 L.Ed.2d 287 (1962). In an opinion written by Judge Sobeloff, the following language pertinent to the instant dispute was set forth:
A problem that almost inevitably arises when railroads are merged is how to integrate the seniority rights of the employees of the component roads. One of the commonplace objectives of a merger is to effect more economical and efficient performance through operating changes. Usually some of the operations of one or the other merging railroads are abandoned, and employees are displaced from their customary positions. Congress foresaw just such possibilities when it enacted that the I.C.C. before approving a merger, `shall require a fair and equitable arrangement to protect the interests of the railroad employees affected.' 49 U.S.C.A. § 5(2) (f). The I.C.C. has followed the entirely reasonable practice of looking to the employees' bargaining representatives for some measure of guidance. Sometimes, however, while the railroad is indifferent as to how the competing interests of the individual employees are to be adjusted and stands ready to put into operation any arrangements acceptable to the employees, the latter find themselves unable to agree. This is such a case.
As established above, the bargaining representative has the power to grant seniority rights and the power to alter them. This is true in nonmerger situations, Ford Motor Co. v. Huffman, 345 U.S. 330, 73 S.Ct. 681, 97 L.Ed. 1048 (1953), as well as in merger cases, Humphrey v. Moore, 375 U.S. 335, 84 S. Ct. 363, 11 L.Ed.2d 370 (1964).
In Huffman, supra, the court found no breach of the implied statutory duty of fair representation first stated in Steele, supra, when a union amended its *826 existing collective agreement to grant enhanced seniority to present employees of Ford for preemployment military service. The resulting changes in seniority standing occasioned layoffs which otherwise would not have occurred. Rejecting the contention that this action breached the bargaining representative's duty of fair representations, the court unanimously said:
Any authority to negotiate derives its principal strength from a delegation to the negotiators of a discretion to make such concessions and accept such advantages as, in the light of all relevant considerations, they believe will best serve the interests of the parties represented. A major responsibility of negotiators is to weigh the relative advantages and disadvantages of differing proposals * * *. Inevitably differences arise in the manner and degree to which the terms of any negotiated agreement affect individual employees and classes of employees. The mere existence of such difference does not make them invalid. The complete satisfaction of all who are represented is hardly to be expected. A wide range of reasonableness must be allowed a statutory bargaining representative in serving the unit it represents, subject always to complete good faith and honesty of purpose in the exercise of its discretion. 345 U.S. at 331, 73 S.Ct. at 683.
Subsequently, in Humphrey, supra, the court had before it a situation involving the consolidation of seniority lists due to a merger of two trucking companies, E & L and Dealers. E & L was an older company, and most of its employees had longer employment status than Dealers' drivers. However, Dealers was the surviving company with the retained routes. Existing contracts stated, "seniority rights for employees shall prevail." Initially, the union informed E & L employees that they would lose their jobs in any transfer since they would go to the bottom of Dealers' existing seniority roster. Subsequently, however, the rosters were dovetailed on the basis of length of service, and E & L drivers were permitted to work at Dealers in accordance with their standing on the merged roster. Large numbers of Dealers' employees were laid off even though their previously held positions survived. Accordingly, they sued in the state courts on the basis that the union had destroyed their accrued rights to the existing jobs in violation of the agreement and had, therefore, acted arbitrarily. The Kentucky Court of Appeals agreed holding that the agreements had been violated, the union had not provided adequate representation to the Dealers' employees in that it could not represent two antagonistic groups of employees, and that the decision of the Joint Committee was erroneous, arbitrary and violative of natural justice. Finding the subject was governed by the federal law of fair representation, the Supreme Court reversed. 375 U.S. 335, 84 S.Ct. 363, 11 L.Ed.2d 370. At the outset, the court said that the power of the bargaining representative "over seniority gave it power over jobs" and was entitled thusly "to integrate the seniority lists upon some rational basis." Upon the record before it, the court could not find adequate support to attack the integrity of the representative or the procedures used by it. Therefore, in reply to the reasoning of the state court, the court said:
[W]e are not ready to find a breach of the collective bargaining agent's duty of fair representation in taking a good faith position contrary to that of some individuals whom it represents nor in supporting the position of one group of employees against that of another * * *. Conflict between employees represented by the same union is a recurring fact. To remove or gag the union in these cases would surely weaken the collective bargainng and grievance processes. * * *
After Dealers absorbed the Louisville business of E & L, there were fewer jobs at Dealers than there were Dealers and E & L drivers. One group or the other was going to suffer. *827 If any E & L drivers were to be hired at Dealers either they or the Dealers' drivers would not have the seniority which they had previously enjoyed. Inevitably the absorption would hurt someone. By choosing to integrate seniority lists based upon length of service at either company, the union acted upon wholly relevant considerations, not upon capricious or arbitrary factors. The evidence shows no breach by the union of its duty of fair representation. Id. at 349-350, 84 S.Ct. at 371.
In the instant case, BLE used length of service as the factor for parring the separate road and yard rosters of the SAL for purposes of consolidation with the already combined ACL engineers' rosters. This is no different than the method sustained by the Supreme Court in Humphrey, supra. As stated by BLE General Chairman Geiger in his Affidavit (¶18), the individual's date of hire was the basis upon which ACL engineers received combination seniority in both road and yard service and was also the basis on which SAL engineers received seniority standing in either road or yard service. Both SAL yard and road engineers were hired throughout the system at various times by the carrier to meet its employment force requirements at that particular time. A perusal of the seniority rosters for the former SAL Old North Carolina Division shows that employees in either yard or road service were hired at various times from 1918, sometimes a large number of only one type were hired in a particular period, and in some years nobody was hired. In fact, at the time of the merger, the junior engineer on the yard seniority roster had a hiring date of May 23, 1952. The mere fact that the carrier's hiring practices based upon its needs may have caused some of the junior engineers to be employed in yard service does not invalidate the principles upon which the SAL engineer rosters were merged. The important factors are that (1) this was the way ACL men received their seniority and (2) date of employment was the happenstance that determined whether an individual was relegated to road or yard service on the SAL. Use of this criterion would conceivably benefit the older yard engineers in service, and is apparently the reason that some of the road engineers, both ACL and SAL, may have had an objection to the consolidated rosters.
However, if any yard engineer was inconvenienced through the consolidation of rosters, this was entirely negated through the March 21, 1968, agreement which gave yard engineers prior rights to the yard assignments if the former did not choose to qualify for road service and the more lucrative assignments therein.
In view of the situation with which it is confronted in a merger, a union is not expected to act to "the complete satisfaction of all who are represented." Ford Motor Co. v. Huffman, 345 U.S. at 338, 73 S.Ct. at 686. Again, as pointed out in Humphrey v. Moore, 375 U.S. 335, 349, 84 S.Ct. 363, 11 L. Ed.2d 370, competition among employees in a seniority dispute is a recurring fact, and all cannot be satisfied. Possibly the most frequently cited authority in this area is Hardcastle v. Western Greyhound Lines, 303 F.2d 182 (9th Cir. 1962). The basic rationale of Hardcastle is that the union's decision, even though it may decrease seniority of some individuals, is satisfactory if it serves a majority of its members. In this case, BLE's decision was undertaken in an attempt not to favor any employee or group thereof but to distribute the work opportunities on an equal basis throughout the merged system. Plaintiffs, however, seem to want the organization to look at a group of individuals, actually only some individuals therein, rather than to the overall situation. However, BLE was not required to look solely to the yard engineers on the former SAL Old North Carolina Division and to permit them "to acquire better seniority rights than they already had." Trotter v. Amalgamated *828 Assn. St. Electric Ry. Employees, 309 F.2d 584, 586 (6th Cir. 1962).
In order to sustain a breach of the bargaining representative's duty of fair representation, plaintiffs would have to establish (1) the purported distinctions or differences, as to which they complain, are irrelevant and not based on merit, Ford Motor Co. v. Huffman, supra, and (2) the conduct of the collective bargaining representative in making those distinctions was based on hostile and invidious considerations, such as racial or nonmembership considerations, Vaca v. Sipes, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). What plaintiffs appear to term "arbitrary" or "gross inequities" cannot be equated with and is not synonymous with the "hostile" or "invidious" discrimination required by the decisions of the Supreme Court. Both Steele and Huffman, supra, create the framework for the decision in this case, and leave no doubt that the bargaining representative is left with a "wide range of reasonableness" for its decisions. 345 U.S. at 338, 73 S.Ct. 681.
In resolving the questions of invidious discrimination, reasonableness, good faith and honesty, this court need only look to the tests prescribed by the Fourth Circuit in Thompson v. Broth. of Sleeping Car Porters, 316 F.2d 191, 200 (4th Cir. 1963). In that case, involving the union's handling of a grievance, the court posed the following questions, which, if answered affirmatively, would have entitled that plaintiff to relief:
Did the plaintiff show that he received different or substantially substandard representation at the hands of the Brotherhood? If so, was it because of some improper reason, such as his unsatisfactory union status? Did this treatment cause him injury?[6]
As to each test, the undisputed material facts permit only a negative response. Plaintiffs cannot successfully argue that BLE was guilty of "hostility" toward them as that test has been defined, because BLE acted upon wholly relevant considerations and in a consistent manner throughout the system.
Finally, in view of plaintiffs' allusion to the possibility of their suffering adversities, it is helpful to again consider that all employees in the merger are subject to the changes and consequent adversities created by a merger. It is also beneficial to consider again Huffman, where the plaintiff was subjected to layoff due to the seniority modifications; Humphrey, where a class of employees of the surviving carrier was in fact laid off to provide jobs for the men employed by the liquidating company; and Schick v. N.L.R.B., 409 F.2d 395 (7th Cir. 1969), where a class of employees suffered a total loss of seniority by being transferred to the bottom of the seniority roster. In each case, the method used was sustained by the courts. Much weaker is the plaintiffs' position in this case, where they have guaranteed employment, have guaranteed earnings, and have prior rights as a group to the same assignments in the same location as prior to the merger.
The underlying philosophy of all the seniority litigation is that the resolution of the competing claims is the product of collective bargaining encouraged by our national labor policy. To protect that policy and to prevent judicial intrusion in the inevitable, continuing seniority disputes that arise in a changing merge-and-consolidate oriented economy, the Supreme Court has provided wide leeway for the bargaining parties in resolving such disputes on the basis that judicial intervention, except in the most extreme cases, would "surely weaken the collective bargaining * * * processes." Humphrey v. Moore, 375 U.S. *829 at 350, 84 S.Ct. at 372. Much less persuasive are the arguments for judicial intervention in the collective bargaining process in this case.
As have the other courts having had the specific questions of the validity of the BLE-SCL merger agreements and the propriety of the consolidated engineer rosters negotiated by BLE before them, this court should hold that all employees in the craft of locomotive engineers were represented fairly by BLE and that the involved BLE agreements were executed and applied in a manner consistent with the duty of fair representation.
Turning again to the case before this court one finds that plaintiffs' charge BLFE instead of BLE. Indeed, the brief handed to the court at the hearing admitted as much:
Plaintiffs concede at the outset that practically all of the operative allegations in the Complaint are aimed at the defendant Brotherhood of Locomotive Firemen and Enginemen instead of the defendant Brotherhood of Locomotive Engineers. Further, they recognize that the Railway Labor Act does recognize the two categories as being separate and empowered to negotiate separately if they choose. The plaintiffs are fully aware of the well established principles that apply when unions and companies are forced to merge seniority rosters when railroads themselves are merged.
In the hearing counsel for plaintiffs admitted he presently knew of no facts which would prove the BLE acted illegally or irresponsibly in any way. He candidly stated that he "wanted them in there" [in the action as defendants] "in case something turned up." As sincere, professionally, as this desire may be to protect his clients, on the record before this court there are no facts, and no claimed knowledge of facts, upon which to presently charge BLE with liability to plaintiffs.[7]
Plaintiff candidly admits his opposition to the motion stems from apprehension that if, upon trial of the issues as to defendants BLFE and the railroad, evidence reveals liability on the part of BLE, the door of the forum will be shut in his face by the summary judgment. Not so, according to prevailing authority, BLE is only one of the defendants. Granting of summary judgment as to BLE, at this stage, does not dispose of the case and is not final judgment. Plaintiff is entitled to the protective features of Rule 54(b), Federal Rules of Civil Procedure:
Judgment Upon Multiple Claims or Involving Multiple Parties. When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.
This court specifically refrains from a determination and direction that entry of final judgment as to BLE should take place at this stage of the proceedings. This order for summary judgment does not adjudicate all pending claims and does not necessarily affect all of the parties. Cohen v. Curtis Publishing *830 Company, 333 F.2d 974, 975, 978 (8th Cir. 1964), citing Garbose v. Giles, 183 F.2d 513, 514 (1st Cir. 1950). See also Jenkins v. Associated Transport, Inc., 330 F.2d 706 (6th Cir. 1964). The court before which the trial is had has full authority to reopen the motion for summary judgment and vacate this order upon proper showing. United States v. Desert Gold Mining Company, 282 F.Supp. 614, 616 (D.Ariz.1968), citing Castner v. First National Bank of Anchorage, 278 F.2d 376 (9th Cir. 1960).
The Clerk will enter summary judgment for defendant Brotherhood of Locomotive Engineers.
And it is so ordered.
NOTES
[1] An unincorporated association, a labor organization, national in scope, and certified under the Railway Labor Act (45 U.S.C. § 151 et seq) as the collective bargaining representative for all employees of defendant railroad in the craft of locomotive engineers.
[2] Plaintiffs erroneously designate themselves as "members of the craft of enginemen." (Comp. ¶ 1). Although employees covered by the Railway Labor Act are organized and represented for collective bargaining purposes on the basis of "crafts" (45 U.S.C. §§ 151a, 152, Fourth, Seventh, Ninth and Eleventh), there is no craft of enginemen. Section 3, First (h) of the Act (45 U.S.C. § 153, First (h) provides for the separate crafts of "engineers" and of "firemen". As stated by the U. S. District Court in Broth. of Loc. Engineers v. Nat'l. Mediation Board, 284 F.Supp. 344 (D.C.D.C. 1968), in reference to this specific item:

"There is no existing separate craft or class of employees, for purposes of the Railway Labor Act, designated or known as `engine service employees' or `locomotive enginemen'. The term `engine service employees' is commonly understood in the railroad industry to refer to both locomotive engineers and locomotive firemen."
On Appeal, the U.S. Court of Appeals upheld this finding (133 U.S.App.D.C. 326, 410 F.2d 1025, fn. 31).
[3] It may be pointed out that though the SAL Old North Carolina had 32% of the men on the consolidated roster (187 of 582), its work equity allocation was greater and would have a natural tendency to benefit them in the consolidation of the rosters.
[4] Civil Action No. 5614, E.D.Va. January 30, 1970.
[5] However wide may be the range of jurisdictional disputes embraced within § 2, Ninth, Congress did not select the courts to resolve them "but" [t]o the contrary, it fashioned an administrative remedy [which] is exclusive [p. 19].
[6] In regard to the last test, the opinion subsequently rendered in Vaca v. Sipes, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967), establishes that the plaintiff must also show his claim is meritorious, i. e., he would have received a successful ruling in arbitration.
[7] The complaint was filed June 8, 1970. Answer of BLE was filed November 16, 1970. The record reveals no pursuit of discovery on the part of plaintiffs. Under rules prevailing in the District of South Carolina, discovery time has lapsed.